FILED
2012 OCT -3 P 1:39
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

E-filing

Steve W. Berman
George W. Sampson
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jason A. Zweig
HAGENS BERMAN SOBOL SHAPIRO LLP
One Penn Plaza, 36th Floor
New York, NY 10119
Telephone: (212) 786-7347
Facsimile: (917) 210-3980

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN YOUNG; BRADLEY SELDIN; and BRUCE STERMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> LG CHEM, LTD.; LG CHEM AMERICA, INC.; PANASONIC CORPORATION; PANASONIC CORPORATION OF NORTH AMERICA; SANYO ELECTRIC CO., LTD.; SANYO NORTH AMERICA CORPORATION; SONY CORPORATION;.; SONY ENERGY DEVICES CORPORATION; SONY ELECTRONICS, INC SAMSUNG SDI CO., LTD.; SAMSUNG SDI AMERICA, INC.; HITACHI, LTD.; HITACHI MAXELL, LTD.; and MAXELL CORPORATION OF AMERICA, <br><br> Defendants. | No. **C 12 - 5129** JCS <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> FAXED |

CLASS ACTION COMPLAINT

010330-11 556258 V1

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE CASE ................................................................................................... 1

II.   JURISDICTION AND VENUE ........................................................................................ 3

III.  THE PARTIES .................................................................................................................. 5

     A.    Plaintiffs ................................................................................................................ 5

     B.    Defendants ............................................................................................................. 5

IV.   STATEMENT OF FACTS ................................................................................................ 9

     A.    Batteries ................................................................................................................ 9

     B.    Lithium Ion Rechargeable Batteries .................................................................... 11

     A.    The Defendants' Conspiracy Stabilized and Raised Lithium Ion
          Rechargeable Battery Prices above Competitive Levels ...................................... 16

          1.    A Conspiracy May Be Inferred From Pricing Behavior for
               Lithium Ion Rechargeable Batteries During the Class Period .................. 16

          2.    Prices for Lithium Ion Rechargeable Battery During the
               Class Period Defied Industry Expectations ............................................... 19

          3.    The Defendants' Pricing and Production Levels in Response
               to the Global Economic Crisis in 2008 Further Supports the
               Existence of the Conspiracy ...................................................................... 25

     B.    The Structure and Characteristics of the Lithium Ion Rechargeable
          Battery Market Render the Conspiracy More Plausible ....................................... 28

          1.    The Lithium Ion Rechargeable Batteries market has high
               barriers to entry ........................................................................................ 28

          2.    The demand for Lithium Ion Rechargeable Batteries is
               Inelastic .................................................................................................... 29

          3.    The market for Lithium Ion Rechargeable Batteries is highly
               concentrated .............................................................................................. 30

     C.    Government Investigations ................................................................................... 31

     D.    Defendants Have a History of Colluding to Fix Prices For Critical
          Components of Consumer Electronics ................................................................. 33

V.    MANNER AND MEANS OF THE CONSPIRACY ........................................................ 35

VI.   THE INFLATED PRICES OF LITHIUM ION REHCHARGEABLE
     BATTERIES WERE PASSED THROUGH TO CONSUMERS ..................................... 36

VII.    TRADE AND COMMERCE ........................................................................................... 37

VIII.   CLASS ACTION ALLEGATIONS .............................................................................. 38

IX.     ANTITRUST INJURY .................................................................................................. 46

X.      FRAUDULENT CONCEALMENT AND TOLLING ...................................................... 46

XI.     CAUSES OF ACTION................................................................................................. 47

FIRST CAUSE OF ACTION  VIOLATION OF SECTION ONE OF THE
        SHERMAN ACT  (On behalf of Plaintiffs and Nationwide Class)................................ 47

SECOND CAUSE OF ACTION  VIOLATION OF STATE ANTITRUST AND
        RESTRAINT OF TRADE LAWS ................................................................................ 48

THIRD CAUSE OF ACTION  UNJUST ENRICHMENT .......................................................... 51

PRAYER FOR RELIEF .............................................................................................................. 52

DEMAND FOR JURY TRIAL ..................................................................................................... 52

010330-11  556258 V1

1    Indirect purchaser plaintiffs Kevin Young, Bradley Seldin, and Bruce Sterman ("Plaintiffs")

2    bring this action on their own behalf and on behalf of all others similarly situated in the United

3    States. Plaintiffs, by and through their attorneys, based on their individual experiences, the

4    independent investigation of counsel and experts unaided by any other complaint or plea

5    agreement, and information and belief, allege as follows:

6    ## I.    NATURE OF THE CASE

7    1.    This lawsuit is brought as a proposed class action against Defendants, the world's

8    largest manufacturers of Lithium Ion Rechargeable Batteries (defined further below), for engaging

9    in a conspiracy to unlawfully fix and artificially raise the prices of Lithium Ion Rechargeable

10   Batteries.[1] Lithium Ion Rechargeable Batteries are an important source of energy for portable

11   computers, personal electronic devices and other products.

12   2.    Defendants, their parents, subsidiaries, or affiliates have orchestrated some of the

13   largest global price-fixing conspiracies witnessed in the past decade – fixing the prices of key

14   components for consumer electronic goods, in particular computers, televisions, and cellular

15   phones. These entities, and many of their executives, have pleaded guilty to price-fixing dynamic

16   random access memory (DRAM) chips, liquid crystal display (LCD) screens, and optical disc

17   drives (ODDS). These component part conspiracies – like the conspiracy to fix Lithium Ion

18   Rechargeable Battery prices – all have very similar features, including: (a) a highly concentrated

19   market, controlled by Asian corporations; (b) pricing pressure exerted on the conspirators by

20   original equipment manufacturers ("OEMs") seeking to price their products in a competitive

21   consumer electronics market; (c) rapid commoditization of new technology; (d) and pricing

22   behavior inconsistent with a competitive market.

23   3.    Just like these other criminal conspiracies, Defendants' conspiracy here successfully

24   targeted yet again another key component of consumer electronic goods by raising prices for

25   ---

26   [1] The subject of this lawsuit and the Defendants' conspiracy is Lithium Ion Rechargeable Batteries which are further described *infra* at paragraphs 45-58. The products containing Lithium Ion Rechargeable Batteries and which were purchased by the Plaintiffs and the Classes are cameras, notebook computers, mobile telephones, smartphones, personal digital assistants, tablet computers, and handheld game consoles (collectively "Lithium Ion Rechargeable Battery Products" or "LIB Products").

28

- 1 -

1     Lithium Ion Rechargeable Batteries, and in turn, the prices of Lithium Ion Rechargeable Battery

2     Products such as those purchased by the Plaintiffs. The Defendants' conspiracy was an illegal and

3     unreasonable restraint of interstate and foreign commerce in violation of Section One of the

4     Sherman Act, 15 U.S.C. § 1 and the laws of numerous states as set forth herein.

5     4.     Plaintiffs and the proposed class consists of consumers who (1) indirectly purchased

6     a stand-alone Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant or

7     (2) a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery

8     containing a cell manufactured by a Defendant, during the period from and including January 1,

9     2002 through 2011 (the "Class Period").

10     5.     "Lithium Ion Rechargeable Batteries" as used in this complaint, are batteries which

11     are rechargeable and which utilize lithium ion technology.

12     6.     Defendants – LG Chem, Ltd., LG Chem America, Inc., Panasonic Corporation,

13     Panasonic Corporation of North America, Sanyo Electric Co., Ltd., Sony Corporation, Sony

14     Electronics, Inc., Sony Energy Devices Corporation, Samsung SDI Co., Ltd., Samsung SDI

15     America, Inc., Hitachi, Ltd., Hitachi Maxell, Ltd., and Maxell Corporation of America (collectively

16     "Defendants") – manufacture, market, and sell Lithium Ion Rechargeable Batteries throughout the

17     United States and the world. The Defendants collectively controlled approximately two-thirds or

18     more of the worldwide market for Lithium Ion Rechargeable Batteries throughout this period, and

19     over 80 percent of the market in the early part of this period. The manufacture and sale of Lithium

20     Ion Rechargeable Batteries is a multi-billion dollar industry. In 2011, the worldwide market for

21     Lithium Ion Rechargeable Batteries was approximately $14 billion. This figure is expected to top

22     $16 billion in 2012.

23     7.     Defendants and other co-conspirators (as yet unknown) agreed, combined and

24     conspired to inflate, fix, raise, maintain, or artificially stabilize prices of Lithium Ion Rechargeable

25     Batteries.

26     8.     As further described below, competition authorities in at least the United States and

27     the European Union have been investigating a conspiracy in the market for Lithium Ion

28     Rechargeable Batteries since at least the first half of 2011. The Antitrust Division of the United

- 2 -

1    States Department of Justice ("DOJ") is conducting a criminal investigation into anticompetitive

2    conduct in the market for Lithium Ion Rechargeable Batteries.

3         9.     As a direct result of the anti-competitive and unlawful conduct alleged herein,

4    Plaintiffs and the Classes paid artificially inflated prices for Lithium Ion Rechargeable Batteries

5    during the Class Period and have thereby suffered antitrust injury to their business or property.

6                    **II.     JURISDICTION AND VENUE**

7         10.    This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(d)

8    and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which vest

9    original jurisdiction in the district courts of the United States for any multi-state class action where

10   the aggregate amount in controversy exceeds $5 million and where the citizenship of any member

11   of the class of plaintiffs is different from that of any defendant.  The $5 million amount-in-

12   controversy and diverse-citizenship requirements of CAFA are satisfied in this case.

13        11.    Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c), because

14   during the Class Period many of the Defendants transacted business, were found, or had agents in

15   this district and because a substantial portion of the affected interstate trade and commerce

16   described below has been carried out in this district.

17        12.    This Court has personal jurisdiction over each Defendant because, *inter alia*, each

18   Defendant: (a) transacted business throughout the United States, including in this district;

19   (b) participated in the sale and distribution of Lithium Ion Rechargeable Batteries throughout the

20   United States, including in this district; (c) had substantial contacts with the United States,

21   including in this district; and/or (d) was engaged in an illegal conspiracy that was directed at and

22   had the intended effect of causing injury to persons residing in, located in, or doing business

23   throughout the United States, including in this district.

24        13.    Defendants engaged in conduct both inside and outside the U.S. that caused, direct,

25   substantial and reasonably foreseeable and intended anti-competitive effects upon interstate

26   commerce within the United States.

27

28

-3-

010330-11 556258 V1

1    14.    The activities of the Defendants and their co-conspirators were within the flow of,

2    were intended to, and did have, a substantial effect on interstate commerce of the United States.

3    Defendants' products are sold in the flow of interstate commerce.

4    15.    Lithium Ion Rechargeable Batteries manufactured abroad by Defendants and sold

5    for use in Lithium Ion Rechargeable Battery Products either manufactured in the United States or

6    manufactured abroad and sold in the United States, are goods brought into the United States for

7    sale, and therefore constitute import commerce.  To the extent any Lithium Ion Rechargeable

8    Batteries are purchased in the U.S., and such Lithium Ion Rechargeable Batteries do not constitute

9    import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged

10   herein during the Class period, had, and continue to have, a direct, substantial and reasonably

11   foreseeable effect on United States commerce.  The anti-competitive conduct, and its effects on

12   United States commerce described herein, proximately caused antitrust injury to the Plaintiffs and

13   members of the Classes in the U.S.

14   16.    By reason of the unlawful activities alleged herein, Defendants substantially

15   affected commerce throughout the U.S., causing injury to the Plaintiffs and members of the

16   Classes.  Defendants, directly and through their agents, engaged in a conspiracy affecting all states

17   to fix or inflate prices of Lithium Ion Rechargeable Batteries, which unreasonably restrained trade

18   and adversely affected the market for Lithium Ion Rechargeable Batteries.

19   17.    Defendants' conspiracy and wrongdoing described herein adversely affected

20   persons in the United States who purchased Lithium Ion Rechargeable Batteries or Lithium Ion

21   Rechargeable Battery Products for personal use and not for resale, including Plaintiffs and

22   members of the Classes.

23   18.    Intradistrict Assignment:  Assignment to the San Francisco or Oakland division of

24   this Court is proper pursuant to Northern District of California Local Rule 3-2(d) because a

25   substantial part of the events giving rise to the claims arose in this District.

26

27

28

- 4 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   THE PARTIES

**A.   Plaintiffs**

19.   Plaintiff Kevin Young is a resident of Albany, California.  During the Class Period, Plaintiff purchased a Dell notebook computer containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury.

20.   Plaintiff Bradley Seldin is a resident of Miami Beach, Florida.  During the Class Period, Plaintiff purchased an Acer notebook computer containing a Lithium Ion Rechargeable Battery manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury.

21.   Plaintiff Bruce Sterman is a resident of New York, New York.  During the Class Period, Plaintiff purchased a Samsung smartphone containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant.  As a result of the antitrust violations alleged in this complaint, the Plaintiff has suffered injury.

**B.   Defendants**

22.   Defendant LG Chem, Ltd. ("LG Chem") is a Korean corporation with its principal executive offices at 20 Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea.  Defendant LG Chem is an affiliate of Seoul-based conglomerate LG Electronics.  LG Chem is one of the world's leading manufacturers of Lithium Ion Rechargeable Batteries.  Defendant LG Chem, either directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion Rechargeable Batteries that were purchased throughout the United States, including in this district, during the Class Period.

23.   Defendant LG Chem America, Inc. ("LG Chem America") is a New Jersey corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.  Defendant LG Chem America is a wholly owned subsidiary of Defendant LG Chem.  Defendant LG Chem America, either directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

- 5 -

1  Lithium Ion Rechargeable Batteries that were purchased throughout the United States, including in

2  this district, during the Class Period.

3      24.    Defendants LG Chem and LG Chem America are referred to collectively herein as

4  "LG Chem."

5      25.    Defendant Panasonic Corporation is a Japanese Corporation with its principal

6  executive offices at 1006 Oaza Kadoma, Osaka 571-8501, Japan. Up until approximately

7  October 1, 2008, Panasonic Corporation was formerly known as Matsushita Electric Industrial Co.,

8  Ltd. Defendant Panasonic manufactures and sells Lithium Ion Rechargeable Batteries under the

9  Panasonic name and also under the name of Defendant and wholly owned subsidiary Sanyo

10  Electric Co., Ltd. With respect to those batteries sold under the Panasonic name, they are produced

11  under Panasonic's internal division called "Energy Company." Defendant Panasonic Corporation

12  is one of the world's leading manufacturers of Lithium Ion Rechargeable Batteries. Defendant

13  Panasonic Corporation, either directly or through a wholly owned subsidiary, participated in the

14  conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion

15  Rechargeable Batteries that were distributed throughout the United States, including in this district,

16  during the Class Period.

17      26.    Defendant Panasonic Corporation of North America, formerly known as Matsushita

18  Electric Corporation of America, is a Delaware Corporation with its principal executive offices at 1

19  Panasonic Way, Secaucus, New Jersey. Panasonic Corporation of North America is a wholly

20  owned and controlled subsidiary of Defendant Panasonic Corporation. Defendant Panasonic

21  Corporation of North America, either directly or through a wholly owned subsidiary, participated

22  in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion

23  Rechargeable Batteries that were distributed throughout the United States, including in this district,

24  during the Class Period.

25      27.    Defendant Sanyo Electric Co., Ltd. ("Sanyo") is a Japanese corporation with its

26  principal executive offices at 5-5 Keihan-Hondori, 2-chome, Moriguchi, Osaka 570-8677, Japan.

27  Defendant Sanyo is one of the largest manufacturers and suppliers of Lithium Ion Rechargeable

28  Batteries in the world. As of December 9, 2009, Defendant Sanyo became a wholly owned

- 6 -

1    subsidiary of Defendant Panasonic Corporation. Defendant Sanyo, either directly or through a

2    wholly owned subsidiary, participated in the conspiracy alleged in this complaint and

3    manufactured, marketed and/or sold Lithium Ion Rechargeable Batteries that were distributed

4    throughout the United States, including in this district, during the Class Period.

5        28.    Defendant Sanyo North America Corporation is a Delaware corporation with its

6    principal executive offices at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo

7    North America Corporation is a wholly owned subsidiary of Defendant Sanyo Electric Co., Ltd.

8    Defendant Sanyo North America Corporation, either directly or through a wholly owned

9    subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed

10    and/or sold Lithium Ion Rechargeable Batteries that were distributed throughout the United States,

11    including in this district, during the Class Period.

12        29.    Defendants Panasonic Corporation, Panasonic Corporation of North America,

13    Sanyo Electric, Co., Ltd., and Sanyo North America Corporation are referred to collectively herein

14    as "Panasonic."

15        30.    Defendant Sony Corporation is a Japanese corporation with its principal executive

16    offices at 7-1 Konan 1-Chome, Minato-Ku, Tokyo, Japan. Defendant Sony Corporation invented

17    the Lithium Ion Rechargeable Battery in 1991 and since then, has been one of the world's leading

18    suppliers of Lithium Ion Rechargeable Batteries. Defendant Sony Corporation, either directly or

19    through a wholly owned subsidiary, participated in the conspiracy alleged in this complaint and

20    manufactured, marketed and/or sold Lithium Ion Rechargeable Batteries that were distributed

21    throughout the United States, including in this district, during the Class Period.

22        31.    Sony Energy Devices Corporation is a Japanese corporation with its principal

23    executive offices at 1-1 Shimosugishita, Takakura, Hiwada-machi, Koriyama-shi, Fukushima,

24    Japan. Defendant Sony Energy Devices Corporation is a wholly owned subsidiary of defendant

25    Sony Corporation. Sony Corporation manufactures its Lithium Ion Rechargeable Batteries though

26    its Sony Energy Devices Corporation subsidiary. Sony Energy Devices Corporation manufactures

27    its Lithium Ion Rechargeable Batteries at plants located in Japan, Singapore, and China. Defendant

28    Sony Energy Devices Corporation, either directly or through a wholly owned subsidiary,

- 7 -

1    participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

2    Lithium Ion Rechargeable Batteries that were distributed throughout the United States, including in

3    this district, during the Class Period.

4        32.    Defendant Sony Electronics, Inc. is a Delaware corporation with its principal

5    executive offices at 16530 Via Esprillo, San Diego, CA 92127. Defendant Sony Electronics, Inc. is

6    a wholly owned subsidiary of defendant Sony Corporation. Defendant Sony Electronics, Inc.,

7    either directly or through a wholly owned subsidiary, participated in the conspiracy alleged in this

8    complaint and manufactured, marketed and/or sold Lithium Ion Rechargeable Batteries that were

9    distributed throughout the United States, including in this district, during the Class Period.

10       33.    Defendants Sony Corporation, Sony Energy Devices Corporation, and Sony

11   Electronics, Inc. are referred to herein as "Sony."

12       34.    Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a Korean corporation with

13   its principal executive offices at 575 Shin-Dong, Youngtong-Gu, Suwon, Gyeonggi South Korea.

14   Defendant Samsung SDI Co., Ltd. is 20% owned by the Korean conglomerate Samsung

15   Electronics, Inc. Defendant Samsung SDI is the world's largest manufacturer of Lithium Ion

16   Rechargeable Batteries. Defendant Samsung SDI, either directly or through a wholly owned

17   subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed

18   and/or sold Lithium Ion Rechargeable Batteries that were distributed throughout the United States,

19   including in this district, during the Class Period.

20       35.    Defendant Samsung SDI America, Inc. ("Samsung SDI America") is a California

21   corporation with its principal executive offices at 85 W. Tasman Drive, San Jose, CA 95134-1703.

22   Samsung SDI America is a wholly owned subsidiary of Defendant Samsung SDI. Defendant

23   Samsung SDI America, either directly or through a wholly owned subsidiary, participated in the

24   conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion

25   Rechargeable Batteries that were distributed throughout the United States, including in this district,

26   during the Class Period.

27       36.    Defendants Samsung SDI and Samsung SDI America are referred to herein as the

28   "Samsung SDI."

- 8 -

1    37.    Defendant Hitachi, Ltd. is a Japanese company with its principal executive office at

2    6-6, Marunouchi l-chome, Chiyoda-ku, Tokyo 100-8280, Japan. Defendant Hitachi, Ltd.

3    manufactures and sells Lithium Ion Rechargeable Batteries through its Components and Devices

4    Business Unit. Defendant Hitachi, Ltd., either directly, or through a wholly owned subsidiary,

5    participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

6    Lithium Ion Rechargeable Batteries that were distributed throughout the United States, including in

7    this district, during the Class Period.

8    38.    Defendant Hitachi Maxell, Ltd. ("Hitachi-Maxell") is a Japanese corporation with

9    its principal executive office at 2-18-2 Iidabashi, Chiyoda-ku, Tokyo, 102-8521 Japan. Defendant

10   Hitachi-Maxell is a wholly owned subsidiary of Defendant Hitachi, Ltd. Hitachi-Maxell was

11   founded in 1960 and manufactures and sells batteries through its batteries business unit. Defendant

12   Hitachi-Maxell, either directly, or through a wholly owned subsidiary, participated in the

13   conspiracy alleged in this complaint and manufactured, marketed and/or sold Lithium Ion

14   Rechargeable Batteries that were distributed throughout the United States, including in this district,

15   during the Class Period.

16   39.    Defendant Maxell Corporation of America ("Maxell") is a New Jersey corporation

17   with its principal executive offices at 3 Garett Mountain Plaza, 3rd Floor, Suite 300, Woodland

18   Park, New Jersey, 07424. Defendant Maxell, either directly, or through a wholly owned

19   subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed

20   and/or sold Lithium Ion Rechargeable Batteries that were distributed throughout the United States,

21   including in this district, during the Class Period.

22   40.    Defendants Hitachi, Ltd., Hitachi-Maxell, Ltd., and Maxell Corporation of America

23   are referred to herein as "Hitachi."

24                          **IV.    STATEMENT OF FACTS**

25   **A.    Batteries**

26   41.    Batteries are one of the primary sources of energy which power many different

27   machines and devices used every day. There are three different categories of batteries:

28
                                        - 9 -

1    1) chemical; 2) physical; and 3) biological. Chemical batteries generate electricity through a

2    chemical reaction that occurs inside the battery. The batteries at issue in this case – Lithium Ion

3    Rechargeable Batteries – are within the chemical family of batteries.

4        42.    Chemical batteries are generally classified as either "primary" or "secondary."

5    Primary batteries are disposable batteries that one uses until they are expended and then discarded.

6    Secondary batteries are rechargeable. Rechargeable batteries account for roughly 80% of all

7    chemical batteries produced worldwide.

8        43.    There are four types of secondary batteries that account for the vast majority of

9    secondary batteries: (1) Lithium Ion Rechargeable Batteries; (2) lead-acid; (3) nickel cadmium;

10   and (4) nickel-metal hydride. Lithium Ion Rechargeable Batteries are by far the most popular type

11   of rechargeable battery. This complaint and the illegal conduct alleged herein, concerns Lithium

12   Ion Rechargeable Batteries.

13       44.    Both Lithium Ion Rechargeable Batteries as well as nickel-metal hydride

14   rechargeable batteries were introduced in or around 1991. Since that time, however, Lithium Ion

15   Rechargeable Batteries have quickly become the most popular type of secondary battery easily

16   outpacing nickel-metal hydride and nickel cadmium rechargeable batteries. The following graph

17   (based on data from the Institute of Information Technology, Ltd.) shows the growth rates of

18   Lithium Ion Rechargeable Batteries versus nickel-metal hydride and nickel cadmium batteries:

19

20

21

22

23

24

25

26

27

28

- 10 -

**Major Rechargeable Battery Production**

**B.     Lithium Ion Rechargeable Batteries**

45.     A Lithium Ion Rechargeable Battery generally contains three primary components: (1) the negative electrode (cathode); (2) positive electrode (anode); and (3) the electrolyte. The negative electrode of a conventional Lithium Ion Rechargeable Battery is made from carbon, typically graphite. The positive electrode is a metal oxide (usually a layered oxide (such as lithium cobalt oxide), a polyanion (such as lithium iron phosphate), or a spinel (such as lithium manganese oxide)). The electrolyte is typically a mixture of organic carbonates such as ethylene carbonate or diethyl carbonate containing complexes of lithium ions (usually lithium salts such as lithium hexafluorophosphate, lithium hexafluoroarsenate monohydrate, lithium percolate, lithium tetrafluoroborate, and lithium triflate).

46.     Internally, the battery has a separator between the cathode and anode and is filled with the organic electrolyte solution. The separator prevents short-circuits that would occur if there were contact between the anode and cathode. At the same time, the separator protects the electrolyte solution and preserves the battery's conductivity. In the recharging process, lithium ions are released from the cathode into the electrolyte solution where they accumulate between the anode layers. During the discharge process, the ions return to the cathode. The movement of lithium ions between the cathode and the anode during the discharge process creates the electric

- 11 -

current from the battery which powers the specific device it is used in. The following diagram illustrates the different parts of a Lithium Ion Rechargeable Battery as well as the discharge/recharge process:





**CHARGING**                                    **DISCHARGING**

47.     There are generally two primary steps in the manufacture of Lithium Ion Rechargeable Batteries. In the first step, the "cell" of the battery is manufactured which includes the cathode, anode, and electrolyte. The cell, and in some cases, multiple cells, are then assembled inside an enclosure. In some cases, certain protection circuitry is also added inside the enclosure. The assembled product is referred to as the "battery" or "module" and is the product that is placed inside a device to supply power to the device. All of the Defendants named herein manufacture both raw Lithium Ion Rechargeable Battery cells as well as modules. The following is a depiction of multiple Lithium Ion Rechargeable Battery cells placed inside an enclosure with added protection circuitry:

- 12 -

010330-11 556258 V1



In addition to the manufacture and sale of raw Lithium Ion Rechargeable Battery cells and modules, the Defendants also sell raw cells to other entities commonly referred to in the industry as "assemblers." In these cases, the raw Lithium Ion Rechargeable Battery cells made by Defendants are incorporated into a module by assemblers who assemble the cells (and if necessary, circuitry) and then sell the module under their own brand name. Whether manufactured by a Defendant or an assembler, the raw cells in a finished battery or module make up the overwhelming cost of a finished Lithium Ion Rechargeable Battery module.

48.     Lithium Ion Rechargeable Batteries are generally divided into four different types: (1) small cylindrical (solid body without terminals); (2) large cylindrical (solid body with large threaded terminals); (3) pouch (soft, flat body such as those used in cell phones); and (4) prismatic (semi-hard plastic case with large threaded terminals). Each Defendant manufactures and markets each of these types of Lithium Ion Rechargeable Batteries. Lithium ion cylindrical or prismatic batteries are used primarily in notebooks, camcorders, mobile phones, and other electronic devices. The following is a picture from Hitachi's website of cylindrical and prismatic lithium ion batteries:



49.     In addition to the four different types of Lithium Ion Batteries described above, there are also lithium ion polymer batteries. Lithium ion polymer batteries have more freedom in battery shape which enables the battery to be easily and perfectly tailored to fit the device. The

- 13 -

1    exterior of the lithium ion polymer battery is generally made of a laminate film which allows it to
2    be more flexible in terms of its shape.

3          50.    One of the primary differences between lithium ion and lithium ion polymer
4    batteries is that in the later, the lithium salt electrolyte is not held in an organic solvent, but rather
5    in a solid polymer composite such as polyethylene oxide or polyacrylonitrile. The dry polymer
6    design offers advantages over the traditional lithium ion battery in terms of fabrication and
7    ruggedness since the electrolyte is a solid polymer as opposed to a gel or liquid electrolyte.

8          51.    Lithium Ion Rechargeable Batteries, as defined herein, includes cylindrical,
9    prismatic, pouch and polymer Lithium Ion Rechargeable Batteries.

10          52.    Lithium Ion Rechargeable Batteries possess certain unique performance qualities
11    which make them the most popular form of rechargeable battery.  In addition, because of these
12    characteristics, Lithium Ion Rechargeable Batteries are not interchangeable with other types of
13    secondary or rechargeable batteries such as nickel cadmium or nickel-metal hydride.

14          53.    Unlike other forms of rechargeable batteries (such as nickel-cadmium or nickel-
15    metal hydride), Lithium Ion Rechargeable Batteries are the only rechargeable battery which do not
16    suffer from any "memory effect."  For example, if a nickel-cadmium battery is charged repeatedly
17    to 70% capacity, the discharge voltage will begin to fall sharply from the 70% even after a full
18    charge and eventually, the battery will be incapable of holding a charge.  The battery essentially
19    remembers 70% as the full capacity.  Lithium Ion Rechargeable Batteries, on the other hand, do not
20    suffer from the memory effect, and there is no risk to reducing the capacity of the battery when
21    only partially charging the battery.

22          54.    A second feature which makes Lithium Ion Rechargeable Batteries unique is that
23    they are more powerful than all other types of rechargeable batteries.  For example, the nominal
24    voltage of a nickel-metal hydride rechargeable battery is 1.2 volts.  The nominal voltage of a
25    Lithium Ion Rechargeable Battery, on the other hand, is 3.7 volts, nearly three times more
26    powerful.

27          55.    Lithium Ion Rechargeable Batteries also possess a higher "energy density" than
28    other types of rechargeable batteries.  "Capacity" refers to the volume of electricity that a battery

- 14 -

can hold. The energy volume in a battery is the voltage times the capacity. Lithium Ion Rechargeable Batteries possess high energy density, both per weight and per volume, as compared to other types of rechargeable batteries. Essentially, a lighter and smaller Lithium Ion Rechargeable Battery can generate the same amount of electricity as a heavier and larger battery of a different type. For example, Lithium Ion Rechargeable Batteries can be as much as 70% lighter and 60% smaller in volume than nickel hydride batteries but deliver the same amount of power.

56.     Lithium Ion Rechargeable Batteries also retain their charge better than other types of rechargeable batteries. For example, Lithium Ion Rechargeable Batteries lose only about 5% of their charge per month when idle. Other types of rechargeable batteries, like nickel-metal hydride batteries, lose nearly 20% of their charge per month when idle.

57.     Because of their superior performance characteristics, and their small size, Lithium Ion Rechargeable Batteries have become the standard battery used in consumer electronic products. It is estimated that about 40-50% of all Lithium Ion Rechargeable Batteries used today are used in small consumer electronic products such as cell phones and notebook computers. The remainder of Lithium Ion Rechargeable Batteries are used in digital cameras, power tools, and other devices. The following graph (which incorporates information from the Institute of Information Technology, Ltd.) depicts the various applications that Lithium Ion Rechargeable Batteries are used in:

- 15 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



58.     Lithium Ion Rechargeable Batteries are also highly standardized products, and interchangeable among the same type and across manufacturers. International standard-setting organizations, such as the International Electrotechnical Commission ("IEC") or the Institute of Electrical and Electronics Engineers ("IEEE") develop standards to be followed by the manufacturers of Lithium Ion Rechargeable Batteries so that products which utilize Lithium Ion Rechargeable Batteries can be developed to accommodate a specific Lithium Ion Rechargeable Battery. For example, a Lithium Ion Rechargeable Battery "18650," refers to a cylindrical shaped battery measuring 18.6 millimeters in diameter by 65.2 millimeters in height with a nominal voltage of 3.6 volts and a capacity of 2250mAh.

**A.     The Defendants' Conspiracy Stabilized and Raised Lithium Ion Rechargeable Battery Prices above Competitive Levels**

**1.     A Conspiracy May Be Inferred From Pricing Behavior for Lithium Ion Rechargeable Batteries During the Class Period**

59.     The Defendants' illegal behavior alleged herein, artificially stabilized and raised the prices of Lithium Ion Rechargeable Batteries during the Class Period. Lithium Ion Battery prices were higher than they would have been absent the conspiracy.

- 16 -

010330-11 556258 V1

1  60. Lithium Ion Rechargeable Batteries were first invented and commercially produced

2 by Defendant Sony in or around 1991. Between 1991 and late 1999, the market for Lithium Ion

3 Rechargeable Batteries was dominated, if not exclusively controlled by, the Sony and Panasonic

4 Defendants located in Japan. During that time the pricing of Lithium Ion Rechargeable Batteries

5 was characterized by remarkable stability.

6  61. In or around 1999, Defendants Sony and Panasonic faced their first competitive

7 threat from outside Japan as lower cost manufacturers from Korea entered the market. Beginning

8 in or around 1997, the Korean government promoted research and development centering around

9 battery manufacturers in an effort to foster the secondary battery industry into the next generation

10 growth industry. As a result, around this same time, Korea established the second automated mass

11 battery production system in the world. The Korean Battery R&D Association took the lead in the

12 "small-size secondary battery development project" together with 11 manufacturers, 10 universities

13 and research centers, investing 54.87 billion won over 5 years from 1997 to 2002.

14  62. As a result of this effort, in 1999, Defendant LG Chem became the first Korean

15 manufacturer of Lithium Ion Rechargeable Batteries followed closely by Defendant Samsung SDI.

16 With the introduction of competition from the Korean Defendants – LG Chem and Samsung SDI –

17 worldwide prices for Lithium Ion Rechargeable Batteries fell precipitously. In fact, during the two

18 year period from 2000-2002, the prices for Lithium Ion Rechargeable Batteries fell by nearly 50%.

19 Prices fell despite strong increase in demand for Lithium Ion Rechargeable Batteries used in

20 devices such as mobile telephones and notebook computers. A dramatic price decrease for Lithium

21 Ion Rechargeable Batteries at this time is best explained by the entry of Defendants Samsung SDI

22 and LG Chem into the worldwide market for these products and their aggressive competition in the

23 marketplace. In fact, as evidence of just how competitive LG Chem and Samsung SDI were, in

24 just three years, Samsung SDI and LG Chem went from having 0% market share in 2000 to

25 approximately 20% of the worldwide market in 2003.

26  63. Defendants Sony, Panasonic, and Hitachi, sought to stem the rapid decline in

27 Lithium Ion Rechargeable Battery prices and their rapid loss of market share due to the intense

28 competition from their Korean counterparts - Defendants Samsung SDI and LG Chem. In or

- 17 -

around the end of 2001, or the beginning of 2002, the Defendants entered into an illegal conspiracy to stabilize and raise prices for Lithium Ion Rechargeable Batteries. This is best observed from the fact that Lithium Ion Rechargeable Batteries prices immediately stabilized after nearly a two-year period of rapid price decreases. In fact, during the period January 2002 - July 2008, the dramatic decline of Lithium Ion Rechargeable Batteries prices that took place during 2000-2001 had completely ceased, and the prices of Lithium Ion Rechargeable Batteries prices actually rose throughout most of 2002-2008. The following depicts the prices of Lithium Ion Rechargeable Batteries during the Class Period:

**Bank of Korea Li-Ion Battery Price Index**



64.     As a result of the worldwide economic crisis beginning in or around 2007, and the corresponding decline in demand for Lithium Ion Rechargeable Batteries and electronic devices, the prices for Lithium Ion Rechargeable Batteries again experienced another decline. Beginning in or around January 2008, the prices for Lithium Ion Rechargeable Batteries began a steady decline which ended in or around January 2009 and resulted in a price decline of approximately 40%.

- 18 -

010330-11 556258 V1

65.     Corresponding with the decline in prices during 2008, Defendants dramatically cut production in an effort to stem the decline in prices. Beginning around 2008, Defendants cut worldwide production for Lithium Ion Rechargeable Batteries by almost 66%. This dramatic coordinated cut in production achieved its desired result - the prices for Lithium Ion Rechargeable Batteries stabilized by the end of 2009.

66.     Lithium Ion Battery prices remained stable - yet again - until Defendants received notice they were being investigated for price-fixing Lithium Ion Batteries by the U.S. Department of Justice and the European Union which began in in mid-2011. Both Japanese and Korean producer price indexes for Lithium Ion Rechargeable Batteries fell after Defendants disclosed they were being investigated. In fact, within 3 months following disclosure of the investigation in 2011, prices began an approximate 10% decline in a mere 3 months. Such a price decline would be predicted with the end of a cartel which had artificially raised prices, and supports the allegations of collusion occurring before this time.

## 2.     Prices for Lithium Ion Rechargeable Battery During the Class Period Defied Industry Expectations

67.     Many analysts predicted that given the economics of the marketplace, prices of Lithium Ion Rechargeable Batteries would go down during the Class Period. But prices not only failed to decline throughout most of the Class Period - prices actually rose, defying industry expectations.

68.     Lithium Ion Rechargeable Batteries were undergoing substantial and continuous technological change that was rapidly improving the energy density of the batteries (watt-hours delivered per weight or volume) and reducing costs. Energy density, measured in watt-hours per kilogram or watt-hours per liter, more than doubled for Lithium Ion Rechargeable Batteries over the decade from 1991 to 2001. Such technological progress continued unabated over the past decade — today, energy density is as high as 250 wh/kg, or 620 wh/l, for Lithium Ion Rechargeable Batteries.[2]

---

[2]     "Rechargeable Li-Ion OEM Battery Products." Panasonic.com.; "Panasonic Develops New Higher-Capacity 18650 Li-Ion Cells; Application of Silicon-based Alloy in Anode." greencarcongress.com.

- 19 -

010330-11 556258 V1

1

**Figure One**
Performance Improvement and Price Decline in Li-Ion Batteries, 1991-2002

2

3

4

5

6

7

8



9

10

11

Source: Institute of Information Technology, Ltd. Japan. 2002.
Reproduced from R. Brodd, "Factors Affecting U.S. Production Decisions: Why are There No Volume Lithium-Ion Battery Manufacturers in the United States?" ATP Working Paper 05-01, National Institute of Standards and Technology, U.S. Department of Commerce, June 2005, p. 62.

12

13

14

        69.     Scientists, engineers, and industry analysts expected to see the declining prices for

15

Lithium Ion Rechargeable Batteries shown in Figure One to continue their steep descent during the

16

period following 2002.  Numerous technical studies undertaken in early to mid-2000s predicted

17

that scale economies and learning curves would act to sharply lower cost as production volumes

18

expanded.  Figure Two below is typical of such predictions.

19

20

21

22

23

24

25

26

27

28

010330-11  556258 V1

**Figure Two**
Reduction in Li-ion Battery Manufacturing Cost with Scale of Production



NIMH vs Li-ion HEV Cell Cost/Volume Curve (50k-3M HEV/year)

Source: Internal Studies at Ford, taken from presentation by T. Miller, "Hybrid Battery Technology and Challenges," MIT Technology Review's Emerging Technology Conference, (September 28, 2006), reproduced in M.A. Kromer and J.B. Heywood, "Electric Powertrains: Opportunities and Challenges in the U.S. Light-Duty Vehicle Fleet," Publication LFEE 2007-03 RP, Laboratory for Energy and the Environment, MIT, May 2007, p. 36 (hereafter "Kromer and Heywood").

70.     The study cited in Figure Two also notes the rapid pace of continuing technological improvement: "while the NiMH [nickel metal hydride] battery is nearing fundamental practical limits . . . lithium ion batteries are still improving. With continued improvements in charge storage capability, lithium-ion's advantage will become more pronounced with the passage of time...Though this trend has slowed somewhat in recent years with the maturation of cobalt- and nickel metal-oxide based lithium-ion batteries, other materials have the potential to allow for continued growth . . . ."[3]

71.     The authors of this 2006 study go on to observe that, "[i]n addition to this fundamental advantage with respect to specific energy and power, lithium-ion batteries also offer the potential for lower cost as the technology matures and production volumes increase. Although more expensive than NiMH batteries today, lithium-ion batteries scale more readily to high volume production hence have greater potential for cost reduction . . . Perhaps more importantly, while the

---

[3]     Kromer and Heywood, p. 36.

- 21 -

1    most expensive constituent materials of NiMh battery are intrinsically tied to the commodity price

2    of nickel (relatively expensive), lithium ion batteries may be made from a number of different

3    fungible materials...Over the longer-term, there is strong potential to transition to even lower cost

4    materials."[4]

5    72.    As seen in Figure Three below, which represents production figures for Lithium Ion

6    Rechargeable Battery cells manufactured by Japanese manufacturers (responsible for the lion's

7    share of global production throughout this decade), the predicted expansion in the production

8    volume of Lithium Ion Rechargeable Batteries did indeed materialize. Batteries produced in Japan

9    more than tripled from just below 34 million units in January 2001, to almost 118 million units in

10    July 2011. The power provided by these technologically improved batteries increased twice as

11    fast, by a factor of almost six over the same period, from just over 34 million Ah (amp-hours), to

12    over 200 million Ah in July 2011.

13 **Figure Three**

Increase in Production Volumes for Li-Ion Batteries in Japan 1000's of Units and Ah



Source: Japan, Research and Statistics Department, Ministry of Economy, Trade and Industry
(METI), *Yearbook of Machinery Statistics, Monthly Report of Machinery Statistics*, various years.

---

[4]    *Id.*

- 22 -

1    73.    Thus, analysts were confident in predicting continuing price declines in Lithium Ion

2    Batteries at the beginning of this decade. (*See* Figure Four below) Basic economics supports the

3    notion that these rapidly increasing volumes of production should have been associated with

4    continuing price declines for Lithium Ion Rechargeable Batteries in a competitive market. After

5    sharp price declines prior to 2002, and flat prices in 2003, industry analysts continued to predict

6    continued annual 7 percent declines in Lithium Ion Rechargeable Battery prices after 2003.

7    However, these continuing price declines predicted by both technologists and market analysts did

8    not materialize because of the formation of the price-fixing cartel alleged in this complaint. The

9    interruption of this trend in 2003 was viewed merely as a temporary deviation from the expected

10    trend, rather than the beginning of a collusive effort by producers to prevent further declines in

11    prices.

12    **Figure Four**
     Historical and Forecast Prices for Batteries, April 2004



Source: International Association for Advanced Rechargeable Batteries,
www.rechargebatteries.org/MarketDataRechargeableBatteries.pdf.

- 23 -

74.     These trends in pricing are evident in the official government producer price index for Lithium Ion Rechargeable Batteries constructed by the Bank of Korea, the second most important location for Lithium Ion Rechargeable Batteries production (after Japan, which did not start producing a Lithium Ion Rechargeable Batteries price index until 2010). (*See* Figure Five below). A price index, unlike an average unit value for batteries, controls for changes in mix of size and qualities of batteries being produced.

**Figure Five**

Lithium-ion Battery Price Indexes, January 2010=100



Source: Bank of Korea, Bank of Japan. Price indexes have been converted to dollar equivalents using Federal Reserve exchange rate data.

75.     Figure Five shows that after the sharp decline in prices beginning in early 2000 (triggered by entry of Korean producer into the market as described above in paragraphs 60-61), the cartel members managed to arrest any continuing decline in Lithium Ion Rechargeable Battery prices, and, defying industry expectations, even increased prices, over a five year period, from early 2002 through early 2008. This effort was highly successful in not only reducing the rate of

-24-

decline, but actually elevating Lithium Ion Rechargeable Battery prices until the Great Recession struck in 2008. At that point, as markets for the mobile consumer electronics and information technology products reliant on use of Lithium Ion Rechargeable Battery crashed, prices started to tumble sharply once again, at an even steeper rate than had been triggered by Korean entry back in early 2000.

**3.    The Defendants' Pricing and Production Levels in Response to the Global Economic Crisis in 2008 Further Supports the Existence of the Conspiracy**

76.    As the global recession reduced demand for the devices which use Lithium Ion Rechargeable Batteries, prices for these batteries also dropped. In fact, prices for Lithium Ion rechargeable Batteries would fall roughly 34% from August 2008 through January 2009. Faced with rapidly decreasing prices during this time, cartel members sharply cut back production of Lithium Ion Rechargeable Batteries. Figure Five shows that the Japanese cartel members dramatically cut production from 125 million units a month in September of 2008, to 52 million units per month in January of 2009, engineering a reduction in output of **58%** over a period of just four months. (Alternatively, if measured by the power capacity—Ah—of the batteries, the same 58% reduction occurred). Then, just five months later, Japanese production shot back up near pre-economic crisis levels to approximately 103 million units per month.

77.    Defendants' near 60% reduction in output successfully arrested further decline in prices, while the continuing restraint in not resuming production growth after 2008 successfully stabilized prices at a roughly constant level, and stemmed further price declines.

78.    Economic principles teach that when producers are behaving competitively, they expand output to where price just covers the incremental or marginal cost of the last unit produced. Defendants' reduction in production by 58% - only to increase output five months later to nearly the same production levels (while holding prices the same) - is not plausibly the result of competitive forces.

79.    This production and pricing behavior is better (more plausibly) explained by the existence of an anticompetitive agreement, because when Defendants raised production a mere five months later, –**they maintained prices at the same level as before the reduction in output.** In

- 25 -

1  other words, Defendants' production and pricing behavior would only be consistent with

2  competition if incremental production costs had somehow been cut by a huge amount - 34% - over

3  the intervening five months. This could then possibly support an inference of competitive prices

4  remaining at the same levels when production returned to nearly the same levels. But as shown

5  below, input costs for Lithium Ion Batteries do not explain Defendants' pricing and production

6  behavior.

7       80.     The two most important raw materials used to manufacture Lithium Ion

8  Rechargeable Batteries are lithium carbonate and cobalt. However, prices for these raw materials

9  do not explain Defendants' changes to Lithium Ion Rechargeable Battery prices and production

10 levels. Figure Six shows the supply chain for making Lithium Ion Rechargeable Batteries taken

11 from a recent U.S. government report. [5]

12 **Figure Six**
       Supply Chain for Lithium-ion Batteries



13
14
15
16
17
18
19
20
21
22
23

81.     Significant increases in cobalt prices in 2004 and 2008 were not mirrored by the

24 slight rate of increase associated with Lithium Ion Rechargeable Battery prices during the 2002

25 through early 2008 time period. And when the Great Recession hit in 2008, cobalt prices, like

26 many other prices (including Lithium Ion Rechargeable Battery prices) fell. But when cobalt

27

28       [5]  U.S. Department of Energy, *Critical Materials Strategy*, December 2010, p. 19.

- 26 -

prices rose again from early 2009 through early 2010, Lithium Ion Rechargeable Battery did not track these price increases. And large declines in cobalt prices in 2004-2005 were not mirrored by the rate of increase of Lithium Ion Rechargeable Battery prices during that time period.



*Figure 3-5. Cobalt prices from January 2000 to January 2010*
*Source: Arnold Magnetic Technologies 2010*

82.    Similarly, Lithium Ion Rechargeable Battery price changes are not readily explained by the price movements for another important raw material - lithium carbonate (LiC). The period from 2000-2004 basically saw flat LiC prices, while Lithium Ion Rechargeable Battery prices dropped precipitously through 2002, then grew at a very slow trend rate. Then, LiC prices more than doubled from 2005-2007 after this flat 2000-2004 period, whereas Lithium Ion Rechargeable Battery prices continued with a slight rate of growth very similar to the 2002-2004 period. LiC prices dropped sharply during 2009-2010, while Lithium Ion Rechargeable Battery prices were basically flat.

- 27 -

010330-11 556258 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



### Figure 3-6. Lithium prices from 1990–2010
**Source: Umicore 2010**

83. Further, the steep price swings of Lithium Ion Batteries are not likely explained by changes in costs for capital, labor and energy. There were no drastic six-month swings in these costs.

## B. The Structure and Characteristics of the Lithium Ion Rechargeable Battery Market Render the Conspiracy More Plausible

84. In addition to Lithium Ion Rechargeable Battery pricing and production levels supporting the existence of a conspiracy, the structure and other characteristics of the Lithium Ion Rechargeable Battery market are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market. Specifically, the Lithium Ion Rechargeable Batteries market: (1) has high barriers to entry; (2) has inelasticity of demand; and (3) is highly concentrated.

### 1. The Lithium Ion Rechargeable Batteries market has high barriers to entry.

85. A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive

-28-

010330-11 556258 V1

1    pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus,

2    barriers to entry help to facilitate the formation and maintenance of a cartel.

3        86.    There are substantial barriers that preclude, reduce or make more difficult entry into

4    the Lithium Ion Rechargeable Batteries market. A new entrant into the business would face costly

5    and lengthy start-up costs, including multi-million dollar costs associated with research and

6    development, manufacturing plants and equipment, energy, transportation distribution

7    infrastructure, skilled labor and long-standing customer relationships.

8        87.    It has been estimated that the cost to build a plant to manufacture Lithium Ion

9    Rechargeable Batteries that is capable of producing 3 million cells per month is approximately $3-

10   $4 per cell. Thus, a plant making 3 million cells per month would cost approximately $108-$144

11   million. This estimate does not include the cost of research, development, and engineering that

12   produced the technology and equipment designs for the plant.

13       88.    In addition to the large costs of building a plant, given the nature of the materials

14   used in Lithium Ion Rechargeable Batteries, any new entrant will be required to comply with

15   various environmental regulations in whatever jurisdiction such plant is built. Compliance with

16   such regulations will require extensive testing and the receipt of government approvals, all of

17   which will take many years.

18       **2.    The demand for Lithium Ion Rechargeable Batteries is Inelastic.**

19       89.    "Elasticity" is a term used to describe the sensitivity of supply and demand to

20   changes in one or the other. For example, demand is said to be "elastic" if an increase in the price

21   of a product results in diminished revenues, with declines in the quantity sold of that product

22   outweighing the effects of higher prices on the value of sales. For products with a highly elastic

23   demand, a price increase results in a large drop in the value of sales. In other words, customers

24   have many feasible alternatives for cheaper products of similar quality, and so cut purchases

25   sharply in the face of even a small price increase.

26       90.    For a cartel to profit from raising prices above competitive levels, market demand

27   must be relatively less elastic at competitive prices. That is, an increase in prices should not cause

28

- 29 -

1    a huge decline in demand. Otherwise, increased prices would result in sharply declining sales, as

2    some customers purchased substitute products or declined to buy altogether. A less elastic demand

3    is a market characteristic that facilitates collusion, allowing producers to raise their prices without

4    triggering customer substitution and sufficient lost sales revenues as to offset the beneficial effect

5    of higher prices on profits for products they still continue to sell.

6    91.    Demand for Lithium Ion Rechargeable Batteries is not very elastic because there are

7    no close substitutes for these products.

8    **3.    The market for Lithium Ion Rechargeable Batteries is highly concentrated.**

9    92.    Market concentration facilitates collusion. If an industry is divided into a large

10    number of small firms, the current gain from cheating on a cartel (profits from sales captured from

11    other cartel members through undercutting of the cartel-fixed price in the current time period,

12    which risks causing the cartel to fall apart in the future) is large relative to the firm's possible gains

13    from the cartel's continuing future success (the firm's future share of the total cartel profits if

14    collusion were to continue successfully). Conversely, with a more concentrated industry, a greater

15    share for a colluding firm in future cartel profits tips the balance in favor of continued collusion,

16    and away from any short-term, transitory bump in profits that could be achieved by undercutting

17    the cartel price and gaining a transitory increase in market share.

18    93.    Empirical scholarship on cartels has primarily focused on a concentration measure

19    called the $CR_4$--the four-firm concentration ratio, the share of product sales accounted for by the

20    four largest firms--as a diagnostic in analyzing what levels of concentration facilitate multi-firm

21    collusion.[6]

22    94.    A seminal published study of Department of Justice price-fixing investigations

23    found that 76 percent of these cartels occurred in sectors with $CR_4$s of 50 percent or greater, which

24    ⁶    The advantage of the $CR_4$ in predicting the relationship between concentration and the

25    likelihood of collusion is that it does not vary with the degree of asymmetry in an industry (unlike the Herfindahl-Hirschman index (HHI), which as Motta notes, "confounds two factors—higher

26    average market share and asymmetry"). Motta observes that if "the measure of concentration does not vary with asymmetry—as for the concentration ratios, $C_k$, that sum the market shares of the $k$

27    largest firms in the industry—then an increase in measured concentration should correspond to a higher likelihood of collusion." M. Motta, *Competition Policy, Theory and Practice*, (Cambridge:

28    Cambridge University Press), 2004, p. 143.

-30-

1  was about double the average $CR_4$ for manufacturing. Fully a quarter of these cartels therefore

2  were still organized in markets with a less than 50 percent share held by the four largest firms.[7]

3  95.    Figure 7 below shows that the $CR_4$ exceeded 60% in the market for Lithium Ion

4  Rechargeable Batteries for all of the proposed class period, topping 80% in some years. The

5  market share of the alleged cartel members never fell below 70%, and reached to almost 90% in

6  some years.

**Figure 7**
**Four-firm Concentration Ratios and Cartel Member Shares in the Lithium Ion Battery Industry**
Global Li-Ion Battery Market Share Percentages

| | 2000[1] | 2005[1] | 2008[2] | 2008[3] | 2010 Q3[2] | 2011[3] |
|---|---|---|---|---|---|---|
| Sanyo | 33.0 | 28.0 | 22.0 | 23.0 | 20.0 | |
| Panasonic | 19.0 | 10.0 | 6.0 | 7.0 | 6.0 | 24.0 |
| Samsung SDI | 0.4 | 11.0 | 15.0 | 15.0 | 20.0 | 24.0 |
| LG Chemical | 1.3 | 6.5 | 7.0 | 7.0 | 14.0 | 16.0 |
| Sony | 21.0 | 13.0 | 15.0 | 14.0 | 11.0 | 8.0 |
| BYD | 2.9 | 7.5 | 8.0 | 9.0 | 5.0 | 5.0 |
| BAK | | | 7.0 | 6.0 | 6.0 | 4.0 |
| TDK | | | | 4.0 | | 4.0 |
| Hitachi Maxell | 3.4 | 3.3 | 5.0 | 4.0 | | 3.0 |
| Toshiba | 11.0 | | | | | |
| NEC TOKIN | 6.4 | 3.6 | | | | |
| All Others | 1.6 | 17.1 | 15.0 | 11.0 | 18.0 | 12.0 |
| | | | | | | |
| $CR_4$ | 84.0% | 62.0% | 60.0% | 61.0% | 65.0% | 72.0% |
| alleged cartel members | 89.1% | 71.8% | 70.0% | 70.0% | 71.0% | 75.0% |

Sources and Notes:
[1]Market shares by value from METI (http://www.meti.go.jp/english/information/downloadfiles/PressRelease/060828VehicleBatteries.pdf).
[2]Market shares by value from January 26, 2011 Deutsche Bank Group report on LiB Materials Industry (citing METI and Nikkei Business Daily).
[3]Market shares by volume from July 20, 2012 Citi Research report on Lithium-ion Technology and Equities (citing TSR and Citi Research). Panasonic's 2011 market share contains Sanyo's (whom it merged with in 12/2009).

## C.    Government Investigations

19  96.    A globally coordinated antitrust investigation is taking place in at least the United

20  States and Europe, aimed at suppliers of Lithium Ion Rechargeable Batteries.

21  97.    In or around May 2011, defendant Sony Corporation disclosed that its wholly

22  owned U.S. subsidiary - Sony Electronics, Inc. – received a subpoena from the Antitrust Division

23  of the U.S. Department of Justice concerning its "secondary batteries" business. Specifically, Sony

24  disclosed that:

> In May 2011, Sony Corporation's U.S. subsidiary, Sony
> Electronics, Inc., received a subpoena from the U.S. Department of
> Justice ("DOJ") Antitrust Division seeking information about its

---

7    *See* G.A. Hay & D. Kelley, "An Empirical survey of Price-Fixing Conspiracies," *Journal of Law and Economics*, vol. 17, 1974.

010330-11 556258 V1

1
2
3
4

> secondary battery business. Sony understands that the DOJ sand
> agencies outside the United States are investigating competition in
> the secondary batteries market. Based on the stage of the
> proceedings, it is not possible to estimate the amount of loss or
> range of possible loss, if any, that might result from adverse
> judgments, settlements or other resolutions of this matter.

5

Sony Corporation Form 20-F for fiscal year ending March 31, 2012.

6

7

8

9

10

98.     Around the same time, according to a Korean news article, a source from the U.S. Department of Justice confirmed that it was conducting a criminal investigation into potential price fixing with respect to the sale of secondary batteries in the United States and has been since the first half of 2011. The same article quoted the source as stating that the investigation is in its final stages and that criminal charges are likely to be filed.

11

12

99.     On or about August 20, 2012, LG Chem confirmed that it also was the target of the investigation being conducted by the U.S. Department of Justice.

13

14

15

100.     Other news articles have confirmed that in addition to defendants Sony and LG Chem, Samsung SDI and Panasonic are also under investigation by the DOJ for price fixing with respect to the sale of rechargeable batteries.

16

17

18

19

20

21

22

23

24

25

101.     It is significant that Defendants' anticompetitive behavior is the subject of a criminal grand jury investigation being conducted by the Department of Justice. In order for the DOJ to institute a grand jury investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed and prepare a detailed memorandum to that effect.[8] Following a review of that memorandum, the request for grand a jury must be approved by the Assistant Attorney General for the Antitrust Division, based on the standard that a criminal violation may have occurred. In addition, the fact that the DOJ Antirust Division investigation is criminal, as opposed to civil, is significant as well. The Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation" state: "[i]n general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, *per se* unlawful

26

27

28

---

[8] *See* Antitrust Grand Jury Practice Manual, Vol. 1, Ch. I.B.1 (1991) ("[i]f a Division attorney believes that a criminal violation of the antitrust laws has occurred, he should prepare a memorandum requesting authority to conduct a grand jury investigation.")(available at http://www.justice.gov/atr/public/guidelines/206542.htm).

- 32 -

1  agreements such as price fixing, bid rigging and horizontal customer and territorial allocations."[9]

2  Accordingly, the existence of a criminal investigation into the market for Lithium Ion

3  Rechargeable Batteries supports the existence of the conspiracy alleged in this complaint.

4  **D.    Defendants Have a History of Colluding to Fix Prices For Critical Components of
       Consumer Electronics**

5

6        102.    Many of the Defendants have a long history of criminal collusion and are either

7  currently involved in worldwide investigations into other technology-related products or have been

8  convicted of participating in price fixing cartels involving technology-related products.  Further,

9  much of the illegal conduct to which the Defendants or their affiliates have admitted to, took place

10 during the Class Period identified in this complaint.

11       103.    A notebook computer contains four key pieces of hardware:  a dynamic random

12 access memory (DRAM) chip, a liquid crystal display (LCD) screen, an optical disk drive (ODD),

13 and a rechargeable lithium-ion battery.  Defendants here have pled guilty to fixing the prices of the

14 first three of these components, and the DOJ is investigating whether to bring criminal price-fixing

15 charges for the fourth component - Lithium Ion Batteries.

16       104.    In or around October 2005, Samsung Electronics Company, Ltd. and Samsung

17 Semiconductor, Inc. agreed to plead guilty and pay a $300 million fine for "participating in an

18 international conspiracy to fix prices in the [Dynamic Random Access Memory] market . . . ."

19 Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. admitted that they

20 participated in the conspiracy from approximately April 1, 1999 through June 15, 2002.  In

21 addition, seven Samsung executives (Il Ung Kim, Sun Woo Lee, Yeongho Kang, Young Woo Lee,

22 Thomas Quinn, Young Hwan Park, Young Bae Rha) agreed to plead guilty to participating in the

23 conspiracy with respect to DRAM.  Each agreed to pay a $250,000 criminal fine and serve a prison

24 sentence in the United States ranging from seven to fourteen months.

25

26

27    _____

28      [9] *See* Antitrust Division Manual, Chapter III.C.5, III-20 (2009), (available at
      http://www.justice.gov.atr/public /divisionmanual/chapter3.pdf.

1    105.    Although it has not been publicly acknowledged, it is widely believed that Samsung

2    is in the DOJ leniency program with respect to the DOJ's investigation into the market for LCDs,

3    meaning that it has admitted its participation in the cartel.

4    106.    In November 2008, LG Display Co., Ltd., a wholly owned Korean subsidiary of LG

5    Electronics, agreed to plead guilty and pay a $400 million to the United States, in connection with

6    its participation in a worldwide conspiracy to fix the prices of LCDs during the period from

7    September 2001 through June 2006. At the time, the fine paid by LG was the second highest fine

8    ever imposed by the Antitrust Division of the DOJ. In addition, in April 2009, an executive of LG

9    Display, Bock Kwon, agreed to plead guilty to participating in the global LCD conspiracy from

10   September 2001 through June 2006. Kwon, a Korean national, agreed to serve 12 months in a U.S.

11   prison and pay a $30,000 criminal fine. Further, in February 2009, another LG Display executive,

12   Duk Mo Koo, agreed to plead guilty to participating in the global conspiracy with respect to LCDs

13   from September 2001 through December 2006.

14   107.    In March 2009, Hitachi Displays, Ltd., a wholly owned Japanese subsidiary of

15   Hitachi, Ltd., agreed to plead guilty and pay a $31 million fine for participating in a worldwide

16   conspiracy to fix the prices of LCDs during the period April 1, 2011 through March 31, 2004.

17   108.    In September 2011, an entity which is a joint venture between Hitachi, Ltd. and LG

18   Electronics, Inc. - Hitachi-LG Data Storage, Inc. - agreed to plead guilty and pay a $21.1 million

19   fine for participating in various conspiracies to rig bids and fix prices for ODDs during the period

20   from June 2004 through September 2009. In addition, three Hitachi-LG Data Storage executives

21   also agreed to plead guilty for participating in the same conspiracy. In December 2011, Yong

22   Kuen Park, Sang Hun Kim, and Sik Hur agreed to plead guilty for participating in the conspiracy

23   with respect to ODDs during the period November 2005 through September 2009. All three agreed

24   to serve prison time in the United States and pay criminal fines.

25   109.    Defendants have also entered guilty pleas for fixing prices for other high-tech

26   products.

27   110.    In or around March 2011, Defendant Samsung SDI, Company, Ltd. agreed to plead

28   guilty and pay a $32 million fine for participating in a "global conspiracy to fix prices, reduce

- 34 -

1    output, and allocate market share of color display tubes, a type of cathode ray tube used in

2    computer monitors and other specialized applications . . . ." Samsung SDI Company Ltd. admitted

3    it participated in the conspiracy from approximately January 1997 through at least March 2006.

4         111.    In September 2010, Defendant Panasonic Corporation agreed to plead guilty and

5    pay a \$49.1 million fine for participating in a conspiracy to "suppress and eliminate competition by

6    fixing prices to customers of household compressors . . . ." during the period October 14, 2004

7    through December 31, 2007.

8                       **V.    MANNER AND MEANS OF THE CONSPIRACY**

9         112.    For purposes of forming and carrying out the charged combination and conspiracy,

10   Defendants did those things that they combined and conspired to do, including, among other

11   things:

12              a.      participating in meetings, conversations and communications in the United

13   States, Japan, Korea and elsewhere to discuss the prices of Lithium Ion Rechargeable Batteries in

14   the United States and elsewhere;

15              b.      agreeing, during those meetings, conversations and communications, on

16   prices for Lithium Ion Rechargeable Batteries sold in the United States and elsewhere;

17              c.      agreeing, during those meetings, conversations and communications, to

18   depress the supply of Lithium Ion Rechargeable Batteries;

19              d.      agreeing, during those meetings, conversations and communications, to

20   coordinate prices for Lithium Ion Rechargeable Batteries sold in the United States and elsewhere;

21              e.      selling Lithium Ion Rechargeable Batteries in the United States and

22   elsewhere at collusive and noncompetitive prices;

23              f.      accepting payment for Lithium Ion Rechargeable Batteries at collusive and

24   noncompetitive prices;

25              g.      engaging in meetings, conversations and communications in the United

26   States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon

27   price-fixing scheme; and

28

- 35 -

010330-11 556258 V1

h.      employing measures to keep their conduct secret.

## VI.      THE INFLATED PRICES OF LITHIUM ION REHCHARGEABLE BATTERIES WERE PASSED THROUGH TO CONSUMERS

113.    Defendants' conspiracy to raise, fix, or maintain the price of Lithium Ion Rechargeable Batteries at artificial levels resulted in harm to Plaintiffs and the Classes because it resulted in them paying higher prices for Lithium Ion Rechargeable Battery Products than they would have in the absence of Defendants' conspiracy.

114.    Lithium Ion Rechargeable Batteries are commodity like products with functionally equivalent products available from Defendants. Defendants manufacture Lithium Ion Rechargeable Batteries pursuant to standard specifications.

115.    A Lithium Ion Rechargeable Battery is purchased by a consumer as a stand-alone product, or as a substantial part of a Lithium Ion Rechargeable Battery Product. When a Lithium Ion Rechargeable Battery is purchased by consumers as a stand-alone product, the battery or the cell inside the battery itself is directly traceable to the specific manufacturing defendant. When a Lithium Ion Rechargeable Battery is purchased as part of a Lithium Ion Rechargeable Battery Product, it is a distinct, physically discrete element of the end-use product and is identifiable by a specific, discrete part or model number that permits tracing. Lithium Ion Rechargeable Batteries are traceable and identifiable throughout the chain of distribution to the end user. They do not undergo any physical alterations as they move through the chain of distribution.

116.    The purchaser buys a Lithium Ion Rechargeable Battery either from the direct purchaser OEM or through a reseller such as a retailer. Thus, a Lithium Ion Rechargeable Battery follows a traceable physical chain from the Defendants to the OEMs, to the purchaser of the Lithium Ion Rechargeable Battery Product. Tracing can help show that changes in the prices paid by direct purchasers of Lithium Ion Rechargeable Batteries affect prices paid by indirect purchasers of the Lithium Ion Rechargeable Batteries themselves, or Lithium Ion Rechargeable Battery Products.

117.    The OEM and the retail markets of Lithium Ion Rechargeable Batteries and Lithium Ion Rechargeable Battery Products are subject to vigorous price competition. The direct purchaser

- 36 -

1   OEMs and retailers have very thin net margins. They are therefore at the mercy of their component
2   costs, such that increases in the price of Lithium Ion Rechargeable Batteries lead to quick,
3   corresponding price increases at the OEM and retail levels for Lithium Ion Rechargeable Batteries
4   and Lithium Ion Rechargeable Battery Products.

5       118.    As a result, the inflated prices of Lithium Ion Rechargeable Batteries resulting from
6   Defendants' price fixing conspiracy have been passed on to Plaintiffs and the Classes by direct
7   purchasers, manufacturers, distributors and retailers.

8       119.    Lithium Ion Rechargeable Batteries make up a substantial component cost of
9   Lithium Ion Rechargeable Battery Products. The retail price of a Lithium Ion Rechargeable
10  Battery Product is determined in substantial part by the cost of the Lithium Ion Rechargeable
11  Battery it contains.

12      120.    Thus, Plaintiffs and members of the Classes have been forced to pay supra-
13  competitive prices for Lithium Ion Rechargeable Batteries and Lithium Ion Rechargeable Battery
14  Products. These inflated prices have been passed on to them by direct purchaser manufacturers,
15  distributors and retailers.

16              **VII.    TRADE AND COMMERCE**

17      121.    During the period covered by this complaint, Defendants sold to manufacturers
18  located in various states in the United States substantial quantities of Lithium Ion Rechargeable
19  Battery Products shipped from outside the United States and from other states in a continuous and
20  uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial quantities
21  of equipment and supplies necessary to the production and distribution of Lithium Ion
22  Rechargeable Battery Products, as well as payments for Lithium Ion Rechargeable Battery
23  Products and related products sold by Defendants, traveled in interstate and foreign trade and
24  commerce. The business activities of Defendants in connection with the production and sale of
25  Lithium Ion Rechargeable Battery Products that were the subject of the charged conspiracy were
26  within the flow of, and substantially affected, interstate and foreign trade and commerce.

27

28

-37-

1  **VIII. CLASS ACTION ALLEGATIONS**

2      122.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule

3  23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on

4  behalf of the following class (the "Nationwide Class"):

5              All persons and entities residing in the United States that indirectly
               purchased for their own use and not for resale either a Lithium Ion
6              Rechargeable Battery containing a cell manufactured by a Defendant
               and/or a Lithium Ion Rechargeable Battery Product containing a
7              Lithium Ion Rechargeable Battery containing a cell manufactured by
               a Defendant, during the period January 1, 2002 to the present.
8
9      123.    Plaintiffs also bring this action on behalf of themselves and as a class action under

10  Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the state

11  antitrust, unfair competition, and consumer protection laws on behalf of the following class (the

12  "Indirect Purchaser Class"):

13              All persons and entities that indirectly purchased for their own use
                and not for resale either a Lithium Ion Rechargeable Battery
14              containing a cell manufactured by a Defendant and/or a Lithium Ion
                Rechargeable Battery Product containing a Lithium Ion
15              Rechargeable Battery containing a cell manufactured by a Defendant
                during the period January 1, 2002 through 2011.

16      124.    The Nationwide Class and the Indirect Purchasers Class are referred to herein as the

17  "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and

18  affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal

19  government, states and their subdivisions, agencies and instrumentalities, and persons who

20  purchased lithium ion rechargeable battery products directly or for resale.

21      125.    While Plaintiffs do not know the exact number of the members of the Classes,

22  Plaintiffs believe there are hundreds of thousands of members in each Class.

23      126.    Common questions of law and fact exist as to all members of the Classes. This is

24  particularly true given the nature of Defendants' conspiracy, which was generally applicable to all

25  the members of both Classes, thereby making appropriate relief with respect to the Classes as a

26  whole. Such questions of law and fact common to the Classes include, but are not limited to:

27

28

-38-

1           (a)     Whether Defendants engaged in a combination and conspiracy among

2 themselves to fix, raise, maintain or stabilize the prices of Lithium Ion Rechargeable Batteries sold

3 in the United States;

4           (b)     The identity of the participants of the alleged conspiracy;

5           (c)     The duration of the alleged conspiracy and the acts carried out by

6 Defendants in furtherance of the conspiracy;

7           (d)     Whether the alleged conspiracy violated the Sherman Act, as alleged in the

8 First Cause of Action;

9           (e)     Whether the alleged conspiracy violated state antitrust and unfair

10 competition law, as alleged in the Second Cause of Action;

11           (f)     Whether Defendants unjustly enriched themselves to the detriment of the

12 Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the

13 Classes to disgorgement of all benefits derived by Defendants, as alleged in the Third Cause of

14 Action;

15           (g)     Whether the conduct of Defendants, as alleged in this Complaint, caused

16 injury to the business or property of Plaintiffs and the members of the Classes;

17           (h)     The effect of the alleged conspiracy on the prices of Lithium Ion

18 Rechargeable Batteries and Lithium Ion Rechargeable Battery Products sold in the United States

19 during the Class Period;

20           (i)     The appropriate injunctive and related equitable relief for the Nationwide

21 Class; and

22           (j)     The appropriate class-wide measure of damages for the Damages Class.

23      127.    Plaintiffs' claims are typical of the claims of the members of the Classes, and

24 Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members

25 of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially

26 inflated prices for Lithium Ion Rechargeable Batteries or Lithium Ion Rechargeable Battery

27 Products purchased indirectly from Defendants.

28

- 39 -

128.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

129.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

130.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

131.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

132.    Plaintiffs bring the Indirect Class on behalf of all persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following classes (collectively, the "State Classes"):

      (a)   **Arizona**: All persons and entities residing in Arizona that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

      (b)   **California**: All persons and entities residing in California that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion

- 40 -

1        Rechargeable Battery containing a cell manufactured by a Defendant during
the period January 1, 2002 through 2011.

2

3     (c)   **District of Columbia**: All persons and entities residing in the District of
Columbia that indirectly purchased for their own use and not for resale either
a Lithium Ion Rechargeable Battery containing a cell manufactured by a
Defendant and/or a Lithium Ion Rechargeable Battery Product containing a
Lithium Ion Rechargeable Battery containing a cell manufactured by a
Defendant during the period January 1, 2002 through 2011.

(d)   **Florida**: All persons and entities residing in Florida that indirectly purchased
for their own use and not for resale either a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant and/or a Lithium Ion
Rechargeable Battery Product containing a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant during the period
January 1, 2002 through 2011.

(e)   **Illinois**: All persons and entities residing in Illinois that indirectly purchased
for their own use and not for resale either a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant and/or a Lithium Ion
Rechargeable Battery Product containing a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant during the period
January 1, 2002 through 2011.

(f)   **Iowa**: All persons and entities residing in Iowa that indirectly purchased for
their own use and not for resale either a Lithium Ion Rechargeable Battery
containing a cell manufactured by a Defendant and/or a Lithium Ion
Rechargeable Battery Product containing a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant during the period
January 1, 2002 through 2011.

(g)   **Kansas**: All persons and entities residing in Kansas that indirectly purchased
for their own use and not for resale either a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant and/or a Lithium Ion
Rechargeable Battery Product containing a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant during the period
January 1, 2002 through 2011.

(h)   **Maine**: All persons and entities residing in Maine that indirectly purchased
for their own use and not for resale either a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant and/or a Lithium Ion
Rechargeable Battery Product containing a Lithium Ion Rechargeable
Battery containing a cell manufactured by a Defendant during the period
January 1, 2002 through 2011.

(i)   **Massachusetts**: All persons and entities residing in Massachusetts that
indirectly purchased for their own use and not for resale either a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant and/or

- 41 -

1    a Lithium Ion Rechargeable Battery Product containing a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant during
2    the period January 1, 2002 through 2011.

3

(j)   **Michigan**: All persons and entities residing in Michigan that indirectly
4    purchased for their own use and not for resale either a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant and/or
5    a Lithium Ion Rechargeable Battery Product containing a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant during
6    the period January 1, 2002 through 2011.

7

(k)   **Minnesota**: All persons and entities residing in Minnesota that indirectly
8    purchased for their own use and not for resale either a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant and/or
9    a Lithium Ion Rechargeable Battery Product containing a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant during
10    the period January 1, 2002 through 2011.

11

(l)   **Mississippi**: All persons and entities residing in Mississippi that indirectly
12    purchased for their own use and not for resale either a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant and/or
13    a Lithium Ion Rechargeable Battery Product containing a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant during
14    the period January 1, 2002 through 2011.

15

(m)   **Nebraska**: All persons and entities residing in Nebraska that indirectly
16    purchased for their own use and not for resale either a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant and/or
17    a Lithium Ion Rechargeable Battery Product containing a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant during
18    the period January 1, 2002 through 2011.

19

(n)   **Nevada**: All persons and entities residing in Nevada that indirectly
20    purchased for their own use and not for resale either a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant and/or
21    a Lithium Ion Rechargeable Battery Product containing a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant during
22    the period January 1, 2002 through 2011.

23

(o)   **New Hampshire**: All persons and entities residing in New Hampshire that
24    indirectly purchased for their own use and not for resale either a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant and/or
25    a Lithium Ion Rechargeable Battery Product containing a Lithium Ion
Rechargeable Battery containing a cell manufactured by a Defendant during
26    the period January 1, 2002 through 2011.

27

(p)   **New Mexico**: All persons and entities residing in New Mexico that
28    indirectly purchased for their own use and not for resale either a Lithium Ion

010330-11 556258 V1

1
2
3

Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

4

(q)   **New York**: All persons and entities residing in New York that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

5
6
7

(r)   **North Carolina**: All persons and entities residing in North Carolina that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

8
9
10
11

(s)   **North Dakota**: All persons and entities residing in North Dakota that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

12
13
14
15

(t)   **Oregon**: All persons and entities residing in Oregon that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

16
17
18
19

(u)   **South Carolina**: All persons and entities residing in South Carolina that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

20
21
22
23

(v)   **South Dakota**: All persons and entities residing in South Dakota that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

24
25
26
27
28

- 43 -

1

2

3

4

    (w)   **Tennessee**: All persons and entities residing in Tennessee that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

5

6

7

8

    (x)   **Utah**: All persons and entities residing in Utah that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

9

10

11

12

    (y)   **Vermont**: All persons and entities residing in Vermont that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

13

14

15

16

    (z)   **West Virginia**: All persons and entities residing in West Virginia that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

17

18

19

20

    (aa)   **Wisconsin**: All persons and entities residing in Wisconsin that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

21

22

23

24

25

26

Excluded from the State Classes are: (1) Defendants; (2) any entity in which Defendants have a controlling interest; (3) Defendants' officers, directors and employees; (4) Defendants' legal representatives, successors and assigns; and (5) the Court to which this case is assigned. The proposed State Classes are both ascertainable and share a well-defined community of interest in common questions of law and fact. Furthermore, this action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

27

28

    133.   Plaintiffs do not know the exact number of Class members at the present time. However, due to the nature of the trade and commerce involved, there are many millions of class

- 44 -

1  members, geographically dispersed throughout the nation such that joinder of all Class members is

2  impracticable.

3  134.  The common legal and factual questions, which do not vary from Class member to

4  Class member, and which may be determined without reference to individual circumstances of any

5  Class member include, but are not limited to, the following:

6  (a)  Whether Defendants engaged in a contract, combination or conspiracy to

7  raise, stabilize, fix and/or maintain prices of Lithium Ion Rechargeable Batteries;

8  (b)  The duration and extent of the alleged contract, combination or conspiracy;

9  (c)  Whether Defendants were participants in the contract, combination or

10  conspiracy alleged herein;

11  (d)  The effect of the contract, combination or conspiracy on the prices of

12  Lithium Ion Rechargeable Batteries and Lithium Ion Rechargeable Battery Products in the United

13  States during the Class Period;

14  (e)  Whether the conduct of Defendants caused injury to Plaintiff and other

15  members of the State Classes;

16  (f)  Whether the alleged contract, combination or conspiracy violated state

17  antitrust statutes; and

18  (g)  Whether the alleged conduct violated the common law of unjust enrichment.

19  135.  Questions of law and fact common to members of the State Classes predominate

20  over any questions which may affect only individual members.

21  136.  Plaintiffs' claims are typical of the claims of the Classes, and Plaintiffs will fairly

22  and adequately protect the interests of the State Classes. Plaintiffs' interests are not antagonistic to

23  the claims of the other members of the Classes, and there are no material conflicts with any other

24  member of the State Classes that would make class certification inappropriate. Plaintiffs have

25  retained competent counsel experienced in complex antitrust and consumer protection class action

26  litigation and will prosecute this action vigorously.

27  137.  A class action is superior to other available methods for the fair and efficient

28  adjudication of this controversy because individual litigation of the claims of all Class members is

-45-

010330-11 556258 V1

1    impracticable. Even if every Class member could afford individual litigation, the court system

2    could not. It would be unduly burdensome on the courts if individual litigation of numerous cases

3    would proceed. By contrast, the conduct of this action as a class action, with respect to some or all

4    of the issues presented in this Complaint, presents fewer management difficulties, conserves the

5    resources of the parties and of the court system, and protects the rights of each Class member.

6        138.    Prosecution of separate actions by individual Class members would create the risk

7    of inconsistent or varying adjudications, establishing incompatible standards of conduct for

8    Defendants, and would magnify the delay and expense to all parties and to the court system

9    resulting from multiple trials of the same complex factual issues.

10       139.    Whatever difficulties may exist in the management of the class action will be

11   greatly outweighed by the benefits of the class action procedure, including, but not limited to,

12   providing Class members with a method for the redress of claims that may not otherwise warrant

13   individual litigation.

14                           **IX.    ANTITRUST INJURY**

15       140.    The effect of Defendants' conduct as described herein has been to artificially inflate

16   the prices paid by Plaintiffs and members of the Classes for Lithium Ion Rechargeable Batteries

17   and Lithium Ion Rechargeable Battery Products.

18                 **X.    FRAUDULENT CONCEALMENT AND TOLLING**

19       141.    Throughout the Class Period, Defendants engaged in a successful, illegal price-

20   fixing and supply control conspiracy that was self-concealing. Defendants effectively,

21   affirmatively and fraudulently concealed their unlawful combination, conspiracy and acts in

22   furtherance thereof from Plaintiffs and the members of the Classes.

23       142.    Plaintiffs did not know nor could have known that the prices for Lithium Ion

24   Rechargeable Batteries and Lithium Ion Rechargeable Battery Products were artificially inflated

25   and maintained by virtue of Defendants' illegal price-fixing conspiracy, and that Plaintiffs and

26   members of the Classes were paying higher prices. Information concerning the various

27   government investigations in the Lithium Ion Rechargeable Batteries industry did not emerge until

28

- 46 -

1     the first half of 2011. It was not until this time that Plaintiffs and members of the Classes had any

2     facts or information concerning the Defendants' illegal conduct.

3          143.    Plaintiffs have exercised due diligence by promptly investigating the facts giving

4     rise to the claims asserted herein upon having reasonable suspicion of the existence of Defendants'

5     conspiracy.

6          144.    As a result of Defendants' fraudulent concealment of their conspiracy, the running

7     of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the Class

8     members have as a result of the anticompetitive conduct alleged in this complaint.

9                     **XI.**    **CAUSES OF ACTION**

10                      **FIRST CAUSE OF ACTION**

11          **VIOLATION OF SECTION ONE OF THE SHERMAN ACT**

12            **(On behalf of Plaintiffs and Nationwide Class)**

13          145.    Plaintiffs incorporate and reallege, as though fully set forth herein, each of the

14     paragraphs set forth above.

15          146.    Defendants and unnamed coconspirators entered into and engaged in a contract,

16     combination, or conspiracy in unreasonable restraint of trade in violation of Section One of the

17     Sherman Act (15 U.S.C. § 1).

18          147.    Beginning as early as 2002 and continuing through 2011, the exact date being

19     unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their

20     co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably

21     restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by

22     artificially reducing or eliminating competition in the United States.

23          148.    In particular, Defendants have combined and conspired to raise, fix, maintain or

24     stabilize the prices of Lithium Ion Rechargeable Batteries.

25          149.    As a result of Defendants' unlawful conduct, prices for Lithium Ion Rechargeable

26     Batteries were raised, fixed, maintained, and stabilized in the United States.

27

28

1   150.   The contract, combination or conspiracy among Defendants consisted of a

2   continuing agreement, understanding, and concerted action among Defendants and their co-

3   conspirators.

4   151.   For purposes of formulating and effectuating their contract, combination, or

5   conspiracy, Defendants and their co-conspirators did those things they contracted, combined, or

6   conspired to do, including:

7          a.   exchanged information on prices charged for Lithium Ion Rechargeable

8   Batteries;

9          b.   agreed to raise, fix, and maintain prices for Lithium Ion Rechargeable

10  Batteries;

11         c.   raised, fixed, and maintained prices for Lithium Ion Rechargeable Batteries;

12         d.   allocated markets for Lithium Ion Rechargeable Batteries; and

13         e.   sold Lithium Ion Rechargeable Batteries throughout the U.S. at

14  non-competitive prices.

15  152.   As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the

16  Class have been injured in their businesses and property in that they have paid more for Lithium

17  Ion Rechargeable Batteries and Lithium Ion Rechargeable Battery Products than they otherwise

18  would have paid in the absence of Defendants' unlawful conduct.

19  153.   The alleged contract, combination or conspiracy is a *per se* violation of the federal

20  antitrust laws.

21  154.   These violations are continuing and will continue unless enjoined by this Court.

22  155.   Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Class

23  seek the issuance of an injunction against Defendants, preventing and restraining the violations

24  alleged herein.

25                          **SECOND CAUSE OF ACTION**

26      **VIOLATION OF STATE ANTITRUST AND RESTRAINT OF TRADE LAWS**

27  156.   Plaintiffs incorporate and reallege, as though fully set forth herein, each of the

28  paragraphs set forth above.

- 48 -

1      157.    Defendants engaged in a continuing contract, combination and conspiracy in

2   restraint of interstate trade and commerce, which had the purpose and effect of fixing, raising,

3   maintaining and/or stabilizing the price of Lithium Ion Rechargeable Batteries at artificially high,

4   non-competitive levels in the United States.

5      158.    The conspiracy had its intended effect, as Defendants benefitted from selling

6   Lithium Ion Rechargeable Batteries at supra-competitive prices.

7      159.    For the purposes of effectuating the aforesaid contract, combination and conspiracy,

8   Defendants:

9           (a)    agreed among themselves to fix, raise, maintain and/or stabilize the prices of

10   Lithium Ion Rechargeable Batteries in the United States;

11          (b)    agreed among themselves to restrict the supply of Lithium Ion Rechargeable

12   Batteries by implementing bid-rigging and coordinating their actions; and

13          (c)    agreed among themselves to implement supra-competitive increases in the

14   prices of Lithium Ion Rechargeable Batteries in the United States.

15      160.    As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the

16   State Classes have been injured in their business and property in that they have paid more for

17   Lithium Ion Rechargeable Batteries and Lithium Ion Rechargeable Battery Products than they

18   otherwise would have paid in the absence of Defendants' unlawful conduct.

19      161.    By reason of the foregoing, Defendants have violated ARIZONA REVISED STATUTES

20   §§ 44-1401, *et seq*.

21      162.    By reason of the foregoing, Defendants have violated CALIFORNIA BUSINESS AND

22   PROFESSIONS CODE §§ 16720, *et seq*.

23      163.    By reason of the foregoing, Defendants have violated DISTRICT OF COLUMBIA CODE

24   ANNOTATED §§ 28-4501, *et seq*.

25      164.    By reason of the foregoing, Defendants have violated the Florida Deceptive and

26   Unfair Trade Practices Act, FLA. STAT. §§ 501.201, *et seq.*

27      165.    By reason of the foregoing, Defendants have violated the Illinois Antitrust Act,

28   ILLINOIS COMPILED STATUTES, §§ 740 Ill. Comp. Stat. 10/1, *et seq*.

- 49 -

1    166.   By reason of the foregoing, Defendants have violated IOWA CODE §§ 553.1, *et seq.*

2    167.   By reason of the foregoing, Defendants have violated KANSAS STATUTES

3    ANNOTATED §§ 50-101, *et seq.*

4    168.   By reason of the foregoing, Defendants have violated the MAINE REVISED STATUTES

5    10 M.R.S. §§ 1101, *et seq.*

6    169.   By reason of the foregoing, Defendants have violated MICHIGAN COMPILED LAWS

7    ANNOTATED §§ 445.771, *et seq.*

8    170.   By reason of the foregoing, Defendants have violated MINNESOTA ANNOTATED

9    STATUTES §§ 325D.49, *et seq.*

10   171.   By reason of the foregoing, Defendants have violated MISSISSIPPI CODE

11   ANNOTATED §§ 75-21-1, *et seq.*

12   172.   By reason of the foregoing, Defendants have violated NEBRASKA REVISED

13   STATUTES §§ 59-801, *et seq.*

14   173.   By reason of the foregoing, Defendants have violated NEVADA REVISED STATUTES

15   ANNOTATED §§ 598A.010, *et seq.*

16   174.   By reason of the foregoing, Defendants have violated NEW MEXICO STATUTES

17   ANNOTATED §§ 57-1-1, *et seq.*

18   175.   By reason of the foregoing, Defendants have violated NEW HAMPSHIRE REVISED

19   STATUTES §§ 356:1, *et seq.*

20   176.   By reason of the foregoing, Defendants have violated NEW YORK GENERAL

21   BUSINESS LAWS §§ 340, *et seq.*

22   177.   By reason of the foregoing, Defendants have violated NORTH CAROLINA GENERAL

23   STATUTES §§ 75-1, *et seq.*

24   178.   By reason of the foregoing, Defendants have violated NORTH DAKOTA CENTURE

25   CODE §§ 51-08.1-01, *et seq.*

26   179.   By reason of the foregoing, Defendants have violated OREGON REVISED STATUTES

27   §§ 646.705, *et seq.*

28

- 50 -

1    180.    By reason of the foregoing, Defendants have violated SOUTH CAROLINA'S UNFAIR

2    TRADE PRACTICES ACT, S.C. CODE ANN. §§ 39-5-10, *et seq*.

3    181.    By reason of the foregoing, Defendants have violated SOUTH DAKOTA CODIFIED

4    LAWS §§ 37-1-3.1, *et seq*.

5    182.    By reason of the foregoing, Defendants have violated TENNESSEE CODE

6    ANNOTATED §§ 47-25-101, *et seq*.

7    183.    By reason of the foregoing, Defendants have violated UTAH CODE ANNOTATED

8    §§ 76-10-911, *et seq*.

9    184.    By reason of the foregoing, Defendants have violated VERMONT STAT. ANN. 9

10   §§ 2451, *et seq*.

11   185.    By reason of the foregoing, Defendants have violated WEST VIRGINIA CODE §§ 47-

12   18-1, *et seq*.

13   186.    By reason of the foregoing, Defendants have violated WISCONSIN STATUTES

14   §§ 133.01, *et seq*.[10]

15                                **THIRD CAUSE OF ACTION**

16                                  **UNJUST ENRICHMENT**

17   187.    Plaintiffs incorporate and reallege, as though fully set forth herein, each of the

18   paragraphs set forth above.

19   188.    To the detriment of Plaintiffs and Class members, Defendants have been and

20   continue to be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged herein.

21   Defendants have unjustly benefited by receiving higher prices for Lithium Ion Rechargeable

22   Batteries, which higher prices were passed along to consumers, and would otherwise not have been

23   possible absent the unlawful and/or wrongful conduct.

24   189.    Between the parties, it would be unjust for Defendants to retain the benefits attained

25   by their actions. Accordingly, Plaintiffs and Class members seek full restitution of Defendants'

26

27   ───────────────
     [10] A demand letter will be sent under Massachusetts General Law Annotated Chapter 93A,
28   *et seq.*, and an amendment adding claims under that law will be made in 30 days if necessary.

- 51 -

1    enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful

2    conduct alleged herein.

3                                              **PRAYER FOR RELIEF**

4            WHEREFORE, Plaintiffs and Class members pray for relief as set forth below:

5            A.       Certification of the action as a class action pursuant to Federal Rule of Civil

6    Procedure 23, and appointment of Plaintiffs as Class Representatives and their counsel of record as

7    Class Counsel;

8            B.       A declaration that Defendants' conduct constituted an unlawful restraint of trade in

9    violation of the state statutes alleged herein and that Defendants are liable for the conduct or

10   damage inflicted by any other co-conspirator.

11           C.       Restitution and/or damages to Class members for their purchases of Lithium Ion

12   Rechargeable Batteries and Lithium Ion Rechargeable Battery Products at inflated prices;

13           D.       Actual damages, statutory damages, punitive or treble damages, and such other

14   relief as provided by the statutes cited herein;

15           E.       Pre-judgment and post-judgment interest on such monetary relief;

16           F.       Equitable relief in the form of restitution and/or disgorgement of all unlawful or

17   illegal profits received by Defendants as a result of the anticompetitive conduct alleged herein;

18           G.       The costs of bringing this suit, including reasonable attorneys' fees; and

19           H.       All other relief to which Plaintiffs and Class members may be entitled at law or in

20   equity.

21                                          **DEMAND FOR JURY TRIAL**

22           Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial

23   on any and all claims so triable.

24

25

26

27

28

                                                        - 52 -

1 | DATED: October 3, 2012

HAGENS BERMAN SOBOL SHAPIRO LLP

2

3 | By: _____

Jeff D. Friedman

4 | Shana Scarlett (217895)

715 Hearst Avenue, Suite 202

5 | Berkley, CA 94710

Telephone: (510) 725-3000

6 | Facsimile: (510) 725-3001

jefff@hbsslaw.com

7 | shanas@hbsslaw.com

8 | Steve W. Berman

George W. Sampson

9 | HAGENS BERMAN SOBOL SHAPIRO LLP

1918 Eighth Avenue, Suite 3300

10 | Seattle, WA 98101

Telephone: (206) 623-7292

11 | Facsimile: (206) 623-0594

steve@hbsslaw.com

12 | george@hbsslaw.com

13 | Jason A. Zweig

HAGENS BERMAN SOBOL SHAPIRO LLP

14 | One Penn Plaza, 36th Floor

New York, NY 10119

15 | Telephone: (212) 786-7347

Facsimile: (917) 210-3980

16 | jasonz@hbsslaw.com

17 | *Attorneys for Plaintiffs and the Proposed Classes*

18

19

20

21

22

23

24

25

26

27

28

- 53 -