# EXHIBIT G

1   BRUCE L. SIMON (Bar No. 96241)
      bsimon@pswplaw.com
2   ROBERT G. RETANA (Bar No. 148677)
      rretana@pswplaw.com
3   AARON M. SHEANIN (Bar No. 214472)
      asheanin@pswplaw.com
4   WILLIAM J. NEWSOM (Bar No. 267643)
      wnewsom@pswplaw.com
5   **PEARSON, SIMON, WARSHAW & PENNY, LLP**
    44 Montgomery Street, Suite 2450
6   San Francisco, California 94104
    Telephone: (415) 433-9000
7   Facsimile:  (415) 433-9008

8   STEVEN T. GUBNER (Bar No. 156593)
      sgubner@ebg-law.com
9   **EZRA BRUTZKUS GUBNER LLP**
    21650 Oxnard Street, Suite 500
10  Woodland Hills, California 91367
    Telephone: (818) 827-9000
11  Facsimile:  (818) 827-9090

12  [Additional counsel listed on signature page]

13  *Attorneys for Plaintiff ALFRED H. SIEGEL, in*
    *his capacity as Liquidating Trustee of the Circuit*
14  *City Stores, Inc. Liquidating Trust*

15

16              **UNITED STATES DISTRICT COURT**

17       **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

18                          C 12   5678

19  ALFRED H. SIEGEL, in his capacity as          CASE NO.
    Liquidating Trustee of the Circuit City Stores,
20  Inc. Liquidating Trust, individually and on     **CLASS ACTION**
    behalf of all others similarly situated,
21                                                  **COMPLAINT**
                       Plaintiff,
22                                                  **JURY TRIAL DEMANDED**
             vs.
23
    LG CHEM, LTD.; LG CHEM AMERICA,
24  INC.; HITACHI, LTD.; HITACHI MAXELL,
    LTD.; HITACHI MAXELL ENERGY, LTD.;
25  MAXELL CORPORATION OF AMERICA;
    PANASONIC CORPORATION;
26  PANASONIC CORPORATION OF NORTH
    AMERICA; SANYO ELECTRIC CO., LTD.;
27  SANYO NORTH AMERICA
    CORPORATION; SAMSUNG SDI CO.,
28  LTD.; SAMSUNG SDI AMERICA, INC.;

847396.6

                           COMPLAINT

1 SONY CORPORATION; SONY ENERGY
DEVICES CORPORATION; AND SONY
2 ELECTRONICS, INC.,

3          Defendants.

4

5

6          Plaintiff ALFRED H. SIEGEL, in his capacity as Liquidating Trustee of the Circuit City

7 Stores, Inc. Liquidating Trust ("Circuit City" or "Plaintiff"), individually and on behalf of a Class

8 of all those similarly situated, brings this action for damages and injunctive relief under the

9 antitrust laws of the United States against the Defendants named herein, and alleges on the

10 investigation of counsel and on information and belief as follows:

11 **I.     INTRODUCTION**

12          1.     This antitrust class action arises out of a conspiracy among the world's largest

13 manufacturers of Lithium-ion Rechargeable Batteries to unlawfully fix, raise, maintain, and/or

14 stabilize the prices of Lithium-ion Rechargeable Batteries sold directly to customers in the United

15 States. Circuit City brings this class action on behalf of itself and all persons and entities who

16 directly purchased Lithium-ion Rechargeable Batteries in the United States from the named

17 defendants, any subsidiaries or affiliates thereof, or any of their co-conspirators, between January

18 1, 2003 and at least December 31, 2011 (the "Class Period").

19          2.     Lithium-ion Rechargeable Batteries are the most popular type of batteries used in

20 the electronics industry. They are commonly used in consumer electronic products, such as

21 notebook computers, tablet computers, mobile phones, cameras, camcorders, music players, GPS

22 devices, and handheld game consoles.

23          3.     The Lithium-ion Rechargeable Battery industry is a multi-billion dollar industry.

24 Global revenue for Lithium-ion Rechargeable Batteries was $11.8 billion in 2010 and is projected

25 to rise to $31.4 billion in 2015 and to $53.7 billion in 2020. Japanese manufacturers have

26 dominated the market since its inception, though Korean and Chinese manufacturers have gained

27 market share in recent years.

28          4.     In the first half of 2011, the U.S. Department of Justice ("DOJ") initiated an

847396.6
2
COMPLAINT

1   investigation into anticompetitive practices in the Lithium-ion Rechargeable Battery market.  The

2   DOJ's investigation involves several of the named defendants, including at least Sony Electronics,

3   Inc., LG Chem, Ltd., and Samsung SDI Co., Ltd.

4        5.      Many of the named defendants, and their subsidiaries and affiliates, have a history

5   of engaging in anticompetitive conduct, having been implicated in several price-fixing

6   conspiracies involving component parts for electronic products, such as Dynamic Random Access

7   Memory (DRAM) chips, Thin Film Transistor-Liquid Crystal Display (TFT-LCD) panels,

8   Cathode Ray Tubes (CRTs), and Optical Disc Drives (ODDs).  These conspiracies are

9   characterized by very similar features, including:  (a) a concentrated market dominated by Asian

10  companies; (b) significant barriers to entry; (c) inelastic demand for the products at issue; (d)

11  common membership in trade associations that allow the defendants to exchange competitive

12  information; (e) pricing behavior that is inconsistent with a competitive market; and (f) a criminal

13  investigation which resulted in guilty pleas by one or more defendants in each of those cases.

14       6.      As alleged herein, the named defendants entered into an illegal agreement,

15  combination, or conspiracy to raise and maintain prices for Lithium-ion Rechargeable Batteries.

16  During the Class Period, Defendants LG Chem, Ltd.; LG Chem America, Inc.; Hitachi, Ltd.;

17  Hitachi Maxell, Ltd.; Hitachi Maxell Energy, Ltd.; Maxell Corporation of America; Panasonic

18  Corporation; Panasonic Corporation of North America; Sanyo Electric Co., Ltd.; Sanyo North

19  America Corporation; Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Sony Corporation;

20  Sony Energy Devices Corporation; and Sony Electronics, Inc. (collectively "Defendants")

21  controlled at least 70% of the worldwide market for Lithium-ion Rechargeable Batteries.  As a

22  result of Defendants' unlawful conduct, Circuit City and members of the Class paid higher prices

23  for Lithium-ion Rechargeable Batteries than they would have paid in a competitive market.

24  **II.      JURISDICTION AND VENUE**

25       7.      Plaintiff brings this action to obtain injunctive relief and treble damages, as well as

26  reasonable attorneys' fees and costs, arising from Defendants' violations of Section 1 of the

27  Sherman Act (15 U.S.C. § 1).

28

847396.6

8.      This Court has subject matter jurisdiction pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) and 28 U.S.C. §§ 1331 and 1337.

9.      Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391(b) and (c) because many Defendants transact business in this district, a substantial part of the events giving rise to Plaintiff's claims occurred in this district, a substantial portion of the affected interstate trade and commerce was carried out in this district, and one or more Defendants reside in this district.

10.     Defendants are subject to the personal jurisdiction of this Court by virtue of their nationwide contacts and other activities, as well as their contacts with the State of California.

## III.   PARTIES

### A.   Plaintiff

11.     Plaintiff Alfred H. Siegel is the Liquidating Trustee of the Circuit City Stores, Inc. Liquidating Trust ("the Trust").  The Trust was established on or around November 1, 2010 in connection with the bankruptcy proceedings of Circuit City Stores, Inc. and its affiliates in United States Bankruptcy Court, Eastern District of Virginia (Case No. 08-35653).  Pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (Dkt. No. 8252), and the Circuit City Stores, Inc. Liquidating Trust Agreement (Dkt. No. 8864), the Liquidating Trustee has the authority to pursue claims on behalf of the Trust for the benefit of the Trust's beneficiaries.

12.     At all times relevant herein, Circuit City Stores, Inc. was incorporated in Virginia and had its principal place of business in Richmond, Virginia.

13.     Prior to the initiation of Chapter 11 bankruptcy proceedings on November 10, 2008, Circuit City was one of the largest consumer electronics retailers in the United States.  It sold consumer electronic products during the Class Period until March 8, 2009.  During the Class Period, Circuit City purchased millions of dollars of Lithium-ion Rechargeable Batteries directly from one or more Defendants and suffered injury as a result of Defendants' unlawful conduct.

847396.6

4

B.     **Defendants**

1.     **LG Chem**

14.     Defendant LG Chem, Ltd. is a Korean company with its principal place of business at LG Twin Towers, 20 Yeouido-dong, Yeongdeungpo-gu, Seoul 150-721, South Korea. Seoul-based conglomerate LG Corporation owns 33.53% of LG Chem, Ltd. and is its single largest shareholder. LG Chem, Ltd. describes itself as one of the world's leading manufacturers of "lithium-ion batteries for cell phone[s], laptop computers and electric vehicles." LG Chem, Ltd. claims to hold a "dominant position in the North American battery market." During the Class Period, LG Chem, Ltd., either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in this district.

15.     Defendant LG Chem America, Inc. ("LG Chem America") is a Delaware corporation with its corporate headquarters located at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. The division of LG Chem America responsible for producing Lithium-ion Rechargeable Batteries for mobile phone applications is located in this district at 2540 N. First Street, Suite 400, San Jose, California 95112. LG Chem America is a wholly owned subsidiary of LG Chem. During the Class Period, LG Chem America, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in this district.

16.     Defendants LG Chem, Ltd. and LG Chem America are collectively referred to herein as "LG Chem."

2.     **Hitachi**

17.     Defendant Hitachi, Ltd. is a Japanese company with its principal place of business at 6-6, Marunouchi l-chome, Chiyoda-ku, Tokyo, 100-8280, Japan. Hitachi, Ltd. manufactures and sells Lithium-ion Rechargeable Batteries through its Components and Devices Business Unit. During the Class Period, Hitachi, Ltd., either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in this district.

1    18.    Defendant Hitachi Maxell, Ltd. ("Hitachi Maxell") is a Japanese company with its

2 principal place of business at 2-18-12 Iidabashi, Chiyoda-ku, Tokyo 102-8521, Japan. Hitachi

3 Maxell became a wholly owned subsidiary of Hitachi, Ltd. in April 2010. During the Class

4 Period, Hitachi Maxell, either directly or through a subsidiary, participated in the conspiracy

5 alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable

6 Batteries throughout the United States, including in this district.

7    19.    Defendant Hitachi Maxell Energy, Ltd. ("Hitachi Maxell Energy") is a Japanese

8 company with its principal place of business at 1 Koizumi, Oyamazaki-cho, Otokuni-gun, Kyoto

9 Prefecture 618-8525, Japan. Hitachi Maxell Energy was created in April 2011 when Hitachi, Ltd.

10 reorganized its battery business into an application-driven framework. Hitachi Maxell Energy

11 took over the battery business for consumer applications. It is a wholly owned subsidiary of

12 Hitachi, Ltd. During the Class Period, Hitachi Maxell Energy, either directly or through a

13 subsidiary, participated in the conspiracy alleged in this Complaint and manufactured, marketed,

14 and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in this

15 district.

16    20.    Defendant Maxell Corporation of America ("Maxell") is a New Jersey corporation

17 with its principal place of business at 3 Garett Mountain Plaza, 3rd Floor, Suite 300, Woodland

18 Park, New Jersey 07424. Maxell is a wholly owned subsidiary of Hitachi Maxell, Ltd., which is a

19 wholly owned subsidiary of Hitachi, Ltd. During the Class Period, Maxell, either directly or

20 through a subsidiary, participated in the conspiracy alleged in this Complaint and manufactured,

21 marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including

22 in this district.

23    21.    Defendants Hitachi, Ltd., Hitachi Maxell, Hitachi Maxell Energy, and Maxell are

24 sometimes referred to herein as "Hitachi."

25    **3.    Panasonic**

26    22.    Defendant Panasonic Corporation, formerly known as Matsushita Electric

27 Industrial Co., Ltd., is a Japanese corporation with its principal place of business at 1006 Oaza

28 Kadoma, Osaka 571-8501, Japan. Panasonic Corporation is one of the world's leading

1    manufacturers of Lithium-ion Rechargeable Batteries.  Panasonic Corporation manufactures and

2    sells Lithium-ion Rechargeable Batteries under the Panasonic name as well as under the name of

3    its wholly owned subsidiary, Defendant Sanyo Electric Co., Ltd.  During the Class Period,

4    Panasonic Corporation, either directly or through a subsidiary, participated in the conspiracy

5    alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable

6    Batteries throughout the United States, including in this district.

7         23.    Defendant Panasonic Corporation of North America, formerly known as

8    Matsushita Electric Corporation of America, is a Delaware corporation with its principal place of

9    business at 1 Panasonic Way, Secaucus, New Jersey 07094.  Panasonic Corporation of North

10   America is a wholly owned and controlled subsidiary of Panasonic Corporation.  During the Class

11   Period, Panasonic Corporation of North America, either directly or through a subsidiary,

12   participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold

13   Lithium-ion Rechargeable Batteries throughout the United States, including in this district.

14        24.    Defendant Sanyo Electric Co., Ltd. ("Sanyo") is a Japanese company with its

15   principal place of business at 5-5, Keihan-Hondori 2-chome, Moriguchi, Osaka 570-8677, Japan.

16   In December 2009, Panasonic Corporation purchased a majority of Sanyo's shares, and in

17   December 2010, Sanyo became a wholly owned subsidiary of Panasonic Corporation.  During the

18   Class Period, Sanyo, either directly or through a subsidiary, participated in the conspiracy alleged

19   in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries

20   throughout the United States, including in this district.

21        25.    Defendant Sanyo North America Corporation is a Delaware corporation with its

22   principal place of business at 2055 Sanyo Avenue, San Diego, California 92154.  Sanyo North

23   America Corporation is a wholly owned subsidiary of Sanyo.  During the Class Period, Sanyo

24   North America Corporation, either directly or through a subsidiary, participated in the conspiracy

25   alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable

26   Batteries throughout the United States, including in this district.

27        26.    Defendants Panasonic Corporation, Panasonic Corporation of North America,

28   Sanyo, and Sanyo North America Corporation are collectively referred to herein as "Panasonic."

4. **Samsung**

27. Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a Korean company with its principal place of business at 428-5 gongse-dong Giheung-gu, Yongin Kyunggi-do, South Korea. Samsung SDI is 20.4% owned by Korean conglomerate Samsung Electronics, Inc. Samsung SDI is one of the world's largest manufacturers of Lithium-ion Rechargeable Batteries. During the Class Period, Samsung SDI, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in this district.

28. Defendant Samsung SDI America, Inc. ("Samsung SDI America") is a California corporation with its principal place of business in this district at 85 W. Tasman Drive, San Jose, California 95134. Samsung SDI America is a 91.7% owned subsidiary of Samsung SDI. During the Class Period, Samsung SDI America, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in this district.

29. Defendants Samsung SDI and Samsung SDI America are collectively referred to herein as "Samsung."

5. **Sony**

30. Defendant Sony Corporation is a Japanese corporation with its principal place of business at 1-7-1 Konan, Minato-Ku, Tokyo 108-0075, Japan. Sony Corporation is one of the world's leading suppliers of Lithium-ion Rechargeable Batteries. During the Class Period, Sony Corporation, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United States, including in this district.

31. Defendant Sony Energy Devices Corporation is a Japanese corporation with its principal place of business at 1-1 Shimosugishita, Takakura, Hiwada-machi, Koriyama-shi, Fukushima 963-0531, Japan. Sony Energy Devices Corporation is a wholly owned subsidiary of Sony Corporation and manufactures Sony's Lithium-ion Rechargeable Batteries. During the Class Period, Sony Energy Devices Corporation, either directly or through a subsidiary, participated in

1   the conspiracy alleged in this Complaint and manufactured, marketed, and/or sold Lithium-ion

2   Rechargeable Batteries throughout the United States, including in this district.

3        32.   Defendant Sony Electronics, Inc. is a Delaware corporation with its principal place

4   of business at 16530 Via Esprillo, San Diego California, 92127.  Sony Electronics, Inc. is a wholly

5   owned subsidiary of Sony Corporation.  During the Class Period, Sony Electronics, Inc., either

6   directly or through a subsidiary, participated in the conspiracy alleged in this Complaint and

7   manufactured, marketed, and/or sold Lithium-ion Rechargeable Batteries throughout the United

8   States, including in this district.

9        33.   Defendants Sony Corporation, Sony Energy Devices Corporation, and Sony

10  Electronics, Inc. are collectively referred to herein as "Sony."

11       34.   The acts alleged against Defendants in this Complaint were authorized, ordered, or

12  done by their officers, agents, employees, or representatives, while actively engaged in the

13  management and operation of Defendants' businesses or affairs.

14       35.   Each Defendant acted as the principal, agent, or joint venturer of, or for, other

15  Defendants with respect to the acts, violations, and common course of conduct alleged by

16  Plaintiff.

17  **IV.   FACTUAL ALLEGATIONS**

18       **A.   Lithium-ion Rechargeable Batteries**

19       36.   There are two general categories of batteries:  primary (disposable) batteries, which

20  are used until they are finished and then discarded, and secondary (rechargeable) batteries, which

21  can be recharged and used for a longer period of time.  Secondary (rechargeable) batteries can be

22  categorized into five different types: (1) lead-acid; (2) nickel cadmium; (3) nickel-metal hydride;

23  (4) nickel-zinc; and (5) lithium-ion.

24       37.   Lead-acid batteries, commonly used in motor vehicles, historically dominated the

25  market for rechargeable batteries.  Over time, innovations in portable technology—such as laptop

26  computers and mobile phones—led to a demand for rechargeable batteries that had a higher

27  energy-to-weight/energy-to-volume ratio than lead-acid batteries.  Thus, rechargeable battery

28  manufacturers began looking to other technologies, such as nickel-based and lithium-ion batteries.

38.     Lithium-ion batteries were first introduced into the market in 1991.  They quickly became the most popular type of rechargeable batteries, as evidenced in the graph below:



39.     Today, lithium-ion batteries occupy the largest share of the rechargeable battery market at approximately 75%.

40.     Lithium-ion batteries work by moving an electrical charge back and forth between anode and cathode through a lithium salt electrolyte.  Lithium-ion batteries are commonly manufactured in the following formats:  (1) cylindrical (the most common format, used in notebook computers); (2) pouch (soft/flat body, used in mobile phones); and (3) prismatic (square/rectangular plastic body, used in electric vehicles).  Each Defendant manufactures and markets each of these types of batteries.

41.     Each Defendant also manufactures and markets lithium polymer batteries, a newer, flexible format of lithium battery that can be molded into almost any shape or size by a manufacturer.  Lithium polymer batteries are increasingly used today in mobile phones, notebook computers, and tablet computers, including Apple's iPhone, iPad, and MacBook family and

1  Amazon's Kindle.  A difference between standard lithium-ion batteries and lithium polymer

2  batteries is that the material used in the latter as the separator between anode and cathode is made

3  of a micro-porous polymer that helps reduce the energy barrier in the chemical reaction between

4  anode and cathode.  However, because the same materials are used for anode and cathode in

5  standard lithium-ion batteries as in lithium polymer batteries, lithium polymer batteries follow the

6  same chemical process as standard lithium-ion batteries.

7       42.     As used in this Complaint, "Lithium-ion Rechargeable Batteries" include

8  cylindrical, pouch, and prismatic lithium-ion batteries and lithium polymer batteries.

9       43.     Lithium-ion Rechargeable Batteries have certain characteristics that give them

10  advantages over other types of rechargeable batteries.  Lithium-ion Rechargeable Batteries are

11  smaller, lighter, and have higher energy density than other types of rechargeable batteries.  Higher

12  energy density means that Lithium-ion Rechargeable Batteries hold higher amounts of energy per

13  weight than other types of rechargeable batteries.  In other words, a smaller and lighter Lithium-

14  ion Rechargeable Battery can generate the same amount of electricity as, for example, a larger and

15  heavier nickel-metal hydride battery.  And, when compared to lead-acid batteries, it takes a six-

16  kilogram lead-acid battery to store the same amount of energy as a one-kilogram Lithium-ion

17  Rechargeable Battery.

18       44.     Unlike other types of rechargeable batteries, Lithium-ion Rechargeable Batteries

19  do not suffer from any memory effect.  "Memory effect" is the phenomenon in which certain

20  batteries lose their maximum energy capacity if they are repeatedly recharged before being fully

21  discharged (*i.e.,* used).  For example, if a nickel cadmium battery is repeatedly discharged to 25%

22  capacity then fully charged to 100% capacity, the battery will eventually "remember" 75% as its

23  full capacity and become incapable of holding a 100% charge.  Lithium-ion Rechargeable

24  Batteries do not suffer from this memory effect and can be recharged and discharged to any

25  capacity.

26       45.     Another advantage of Lithium-ion Rechargeable Batteries is that they have low

27  self-discharge rates.  This means that they lose minimal amounts of their charge when they are not

28  being used.  Lithium-ion Rechargeable Batteries lose approximately 5% of their charge per month

when they are idle, compared to 10%-20% per month for nickel cadmium batteries and over 30% per month for nickel-metal hydride batteries.

46. These and other characteristics of Lithium-ion Rechargeable Batteries have made them the standard battery of choice in consumer electronic products. Approximately 40-50% of all Lithium-ion Rechargeable Batteries in use today are for mobile phone and notebook computer applications. Many are also used in tablet computers, cameras, camcorders, music players, GPS devices, handheld game consoles, power tools, and even electric vehicles. The following chart shows shipments of Lithium-ion Rechargeable Batteries by end-use:



*Source: Institute of Information Technology*

47. Lithium-ion Rechargeable Batteries generally are not interchangeable among other types of rechargeable batteries, such as nickel cadmium, nickel-metal hydride, and nickel-zinc. These other types of rechargeable batteries have different charging patterns than Lithium-ion Rechargeable Batteries. Unless an electronic device's charger is pre-configured by the manufacturer to accept all different types of rechargeable batteries, these other batteries will not

1   work properly with the device.  The technology used to make Lithium-ion Rechargeable Batteries

2   is standard across manufacturers, however, meaning Lithium-ion Rechargeable Batteries are

3   fungible and interchangeable within the various formats discussed above.

4          **B.**   **Background on the Lithium-ion Rechargeable Battery Market**

5         48.   Lithium-ion Rechargeable Batteries were first developed in the 1970s by researcher

6   M.S. Whittingham, who combined titanium disulfide with lithium metal to create a new battery

7   system.[1]  Subsequent efforts were made by researchers over the late 1970s and 1980s to enhance

8   the battery's cycle life and safety by using different materials as the battery's electrodes.

9         49.   In 1991, Sony released the first commercial lithium-ion battery.  Between 1991 and

10  1999, Sony and fellow Japanese manufacturer Panasonic dominated the market for Lithium-ion

11  Rechargeable Batteries.  Prices for Lithium-ion Rechargeable Batteries remained stable during this

12  time.

13        50.   Around 1999, lower cost manufacturers from Korea entered the Lithium-ion

14  Rechargeable Battery market, posing the first competitive threat from outside Japan to Sony and

15  Panasonic.  LG Chem became the first Korean manufacturer of Lithium-ion Rechargeable

16  Batteries in 1999, and Samsung SDI followed suit.

17        51.   The introduction of competition from the Korean manufacturers caused worldwide

18  prices for Lithium-ion Rechargeable Batteries to drop.  For example, from 2001 to 2002, prices of

19  Lithium-ion Rechargeable Batteries imported into the United States declined by about 33%.

20  Prices fell despite a strong increase in demand for Lithium-ion Rechargeable Batteries used in

21  developing device markets, such as mobile phones and notebook computers.

22        52.   The price drop for Lithium-ion Rechargeable Batteries in the United States from

23  2001 to 2002 can be explained by the entry of, and price competition from, Korean manufacturers

24  in the Lithium-ion Rechargeable Battery market, namely LG Chem and Samsung SDI.  In 2000,

25  LG Chem and Samsung SDI collectively had less than 2% of the Lithium-ion Rechargeable

26   

27  [1] M.S. Whittingham, *Electrical Energy Storage and Intercalation Chemistry*, 192 SCIENCE 1126, 1126-27 (1976), *available at* http://www.sciencemag.org/content/192/4244/1126.

28   

1   Battery market.  By 2003, they had captured 20% of the market.

2        53.    As Lithium-ion Rechargeable Battery prices declined and the Korean

3   manufacturers gained market share, Japanese manufacturers Sony, Panasonic, and Hitachi

4   coordinated among themselves and with the new entrants to curtail the declining prices and the

5   Japanese manufacturers' rapid loss of market share.  Following the decline in U.S. Lithium-ion

6   Rechargeable Battery prices from 2001 to 2002 as alleged hereinabove, prices stabilized and

7   began to increase.  From the beginning of 2003 until approximately 2009, the price decrease that

8   occurred prior to 2003 largely had ceased.  On average, prices for Lithium-ion Rechargeable

9   Batteries remained stable or increased for most of this period.

10        54.    The pricing behavior for Lithium-ion Rechargeable Batteries from the beginning of

11   2003 until approximately 2009 was inconsistent with what would be expected in a competitive

12   market.  This pricing behavior, combined with other features of the Lithium-ion Rechargeable

13   Battery market alleged below, constitutes circumstances indicating an illegal conspiracy to fix,

14   raise, maintain, and/or stabilize prices for Lithium-ion Rechargeable Batteries.

15        55.    The following graph depicts the prices for Lithium-ion Rechargeable Batteries

16   imported into the United States during the Class Period:[2]

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   _____

25   [2] Source: US ITC.  Prior to July 2009, the Harmonized Tariff Schedule combined lithium ion
     batteries with some other types of storage batteries (HTS 8507.80.8000).  From July 2009 to Dec
26   2011, lithium ion batteries were tracked under HTS 8507.80.8010, and beginning Jan 2012 were
     tracked under HTS 8507.50.0000.  The index, chart and table in paragraphs 55, 57-58 represent a
27   combination of these data.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15     56.     In early 2008, in anticipation of a long-term growth in hybrid-electric and electric

16   vehicle production, many Defendants announced plans to expand their production capacity.  In

17   Japan, Panasonic announced that it would raise its capacity by 83%, Sony announced plans to

18   raise its capacity by 80%, and Sanyo announced that it would raise its capacity by 36%.  Among

19   the Korean manufacturers, Samsung SDI announced plans to raise its capacity by 93%, and LG

20   Chem announced that it would raise its capacity by 86%.

21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

57.     This capacity expansion was ill-timed, as the final quarter of 2008 saw the onset of a worldwide economic crisis and a corresponding decline in demand for Lithium-ion Rechargeable Batteries.  Shipments of Lithium-ion Rechargeable Batteries by Defendants dropped significantly from mid-2008 highs.  Industry analysts predicted that Defendants' new capacity, combined with lower demand for consumer electronic products, would result in an oversupply of Lithium-ion Rechargeable Batteries.  Despite the global recession and anticipated glut in supply, prices in the United States remained high, even though shipments took almost two years to reach pre-recession levels.  The following graph depicts the shipments of Lithium-ion Rechargeable Batteries into the United States during the Class Period:



58.     The following table sets forth the estimated value of the shipments of Lithium-ion Rechargeable Batteries into the United States during the Class Period:

| Year | Value of Imports ($millions) |
|------|------------------------------|
| 2003 | $316.9 |
| 2004 | $478.5 |
| 2005 | $550.2 |
| 2006 | $657.9 |
| 2007 | $666.1 |
| 2008 | $811.5 |
| 2009 | $763.7 |
| 2010 | $933.7 |
| 2011 | $1,055.0 |

59.     Industry analysts also predicted that the oversupply created by Defendants' capacity expansion would lead to price wars and resulting lower prices.  However, the opposite happened.  Despite the claimed excess inventory of Lithium-ion Rechargeable Batteries, prices increased in 2009 and 2010.  Again, such pricing behavior is inconsistent with what would be expected in a competitive market, and constitutes further circumstantial evidence of a conspiracy to fix, raise, maintain, and/or stabilize prices of Lithium-ion Rechargeable Batteries.

60.     Lithium-ion Rechargeable Battery prices remained high until 2011, when Defendants received notice that they were being investigated by the DOJ for price-fixing.  Within three months after the investigations were announced, prices for Lithium-ion Rechargeable Batteries fell approximately 10%.  Such a price decline is expected as a cartel ends and the effect of its artificially-raised and stabilized prices diminishes.  Prices for Lithium-ion Rechargeable Batteries increased again in mid-to-late 2011.  Such price increases are consistent with the lingering effects of the conspiracy alleged herein.

**C.     The Structure and Characteristics of the Lithium-ion Rechargeable Battery Market Made It Susceptible to Collusion**

61.     The structure and characteristics of the Lithium-ion Rechargeable Battery market during the Class Period also facilitated a conspiracy.  These features included market

1  concentration, significant barriers to entry, inelastic demand, the existence of trade associations

2  and other common forums, and a history of anticompetitive conduct by Defendants.

3       **1.     Market Concentration**

4       62.     The smaller the number of firms in a market, the more conducive a market is to

5  cartelization.  The Lithium-ion Rechargeable Battery market was concentrated insofar as the

6  alleged cartel members held a 70% or greater market share throughout the Class Period.

7       63.     In 2000, Sanyo had the greatest share of the Lithium-ion Rechargeable Battery

8  market (33%), followed by Sony (21%), Panasonic (19%), Hitachi Maxell (3.4%), LG Chem

9  (1.3%), and Samsung SDI (0.4%).  In 2008, Panasonic/Sanyo had the greatest market share based

10  on shipments of Lithium-ion Rechargeable Batteries (28%), followed by Samsung SDI and Sony

11  (15% each), LG Chem (7%), and Hitachi Maxell (5%).

12       64.     Today, Defendants are five of the largest producers of Lithium-ion Rechargeable

13  Batteries as measured by market share.

14       **2.     Barriers to Entry**

15       65.     High barriers to entry by a new firm into a market are important to cartelization

16  because they keep new entrants from undercutting the cartel's supracompetitive prices.  During the

17  Class Period, there were significant barriers to entry into the Lithium-ion Rechargeable Battery

18  market.  A new entrant into the market would have faced expensive and lengthy start-up costs,

19  including millions of dollars associated with research and development, manufacturing plants and

20  equipment, energy, and transportation.

21       66.     One of the biggest barriers to entry into the Lithium-ion Rechargeable Battery

22  market was the high cost of fabrication plants ("fabs"), where the batteries are manufactured.  In

23  2011, Panasonic announced that it planned to build a new fab in China that would cost up to $366

24  million.  Also in 2011, LG Chem announced that it planned to build two new fabs in South Korea

25  and the United States that would cost $1.84 billion.  In 2012, Samsung SDI announced that it

26  would invest over $700 million over the next five years to upgrade its Malaysian factory in order

27  to manufacture Lithium-ion Rechargeable Batteries.

28       67.     In addition to large infrastructure costs, any new entrant into the Lithium-ion

18

1  Rechargeable Battery market would have had to comply with various environmental regulations in

2  whatever location it built a fab.  Compliance with such regulations would have required extensive

3  testing and the receipt of governmental approvals, all of which would have taken many years.

                 **3.**       **Inelasticity of Demand**

5         68.     Elasticity describes the responsiveness of demand for a product to a change in the

6  product's price.  Demand is inelastic when an increase in a product's price does not drive

7  consumer demand down.  Inelastic demand facilitates cartelization because it allows cartel

8  members to raise prices without fear that consumers will purchase cheaper substitute products.

9         69.     During the Class Period, demand for Lithium-ion Rechargeable Batteries was, and

10  continues to be, inelastic because there are no close substitutes for these products due to their

11  unique performance characteristics.

                 **4.**       **Trade Associations and Other Common Forums**

13         70.     Defendants are members of several battery trade associations and attended, spoke

14  at, or presented at a number of trade shows, conferences, and forums on batteries during the Class

15  Period.  These trade associations and other common forums provided an opportunity for

16  Defendants to meet and discuss prices and other aspects of their conspiracy.

17         71.     One such trade association is the Portable Rechargeable Battery Association

18  ("PRBA").  The PRBA claims that it "serves as the voice of the Rechargeable Power Industry,"

19  working closely with legislative, regulatory, and standards-issuing agencies, including the U.N.  It

20  hosts an annual meeting attended by many Defendants or their affiliates.  Its members include

21  Maxell Corporation of America, Panasonic Industrial Devices Sales Company of America,

22  Samsung SDI Co., Ltd., Sanyo Energy (U.S.A.) Corporation, and Sony Electronics, Inc.  In

23  addition, officers of Panasonic, Sanyo, and Sony sit on the PRBA's board of directors.

24         72.     Japanese Defendants Panasonic, Sanyo, Sony, and Hitachi Maxell Energy, and an

25  affiliate of Korean defendant Samsung SDI  are all members of the Battery Association of Japan

26  ("BAJ").  The BAJ's stated purpose is to "promote[] research and development of batteries and

27  battery applied products."  Among its primary tasks is participating in international working

28  groups and conferences "in order to *exchange information* and promote international

1    collaboration." (Emphasis added.)

2        73.    Defendants also regularly attended or participated in annual conferences tailored to

3    the rechargeable battery industry.  These conferences provided Defendants with a forum to meet

4    and discuss aspects of their conspiracy.  For example, representatives of Panasonic, Sanyo, and

5    Sony served as committee members for the International Rechargeable Battery Expo (BATTERY

6    JAPAN), "the world's largest trade show for rechargeable batteries."  Additionally, representatives

7    of LG Chem, Maxell, Panasonic, and Samsung SDI attended the International Battery Seminar

8    and Exhibit, held annually in Florida.  This 29-year running seminar describes itself as providing

9    "key industry speakers [the opportunity] to discuss the state of the art of worldwide energy storage

10   technology developments for portable products, power and vehicular applications."

11       74.    These trade associations and other industry forums facilitated collusion and

12   functioned as a means for Defendants to cooperate and discuss prices.

13           5.    **History of Anticompetitive Conduct**

14       75.    Many of the Defendants have a history of anticompetitive conduct, and have either

15   been involved, or are currently involved, in antitrust investigations into price-fixing in other

16   technology-related markets.  Significantly, much of this conduct occurred during the Class Period

17   identified in this case.  To the extent this prior conduct involved consumer electronic products,

18   those products were marketed through the same or related channels as Lithium-ion Rechargeable

19   Batteries and were overseen by some of the same employees, divisions, or departments of the

20   Defendants for at least part of the Class Period.

21       76.    For example, in addition to the central processing unit itself, a notebook computer

22   is comprised of four primary components:  a DRAM chip, a TFT-LCD screen, an ODD, and a

23   Lithium-ion Rechargeable Battery.  Certain Defendants (or subsidiaries or affiliates thereof) have

24   already pled guilty to fixing the prices of the first three of these components, as well as other

25   related products.

26       77.    In or around October 2005, Samsung Electronics Company, Ltd. and Samsung

27   Semiconductor, Inc. agreed to plead guilty and pay a $300 million fine for "participating in an

28   international conspiracy to fix prices in the DRAM market" from approximately April 1, 1999

847396.6

1   through June 15, 2002.  In March 2011, Defendant Samsung SDI Company Ltd. agreed to plead

2   guilty and pay a $32 million criminal fine for participating in "a global conspiracy to fix prices,

3   reduce output and allocate market shares of color display tubes (CDTs), a type of cathode ray tube

4   used in computer monitors and other specialized applications" from approximately January 1997

5   to March 2006.

6        78.    In November 2008, LG Display Co., Ltd. agreed to plead guilty and pay a $400

7   million fine to the U.S. government for participating in a worldwide conspiracy to fix the prices of

8   TFT-LCD screens during the period from September 2001 through June 2006.  In March 2009,

9   Hitachi Displays, Ltd. agreed to plead guilty and pay a $31 million fine for participating in that

10  same conspiracy during the period from April 2001 through March 2004.

11       79.    In September 2011, Hitachi-LG Data Storage, Inc. (a joint venture between

12  Japanese company Hitachi, Ltd. and Korean company LG Electronics, Inc.) agreed to plead guilty

13  and pay a $21.1 million fine for participating in various bid-rigging and price-fixing conspiracies

14  for ODDs during the period from June 2004 through September 2009.

15       80.    These entities' established anticompetitive conduct in various technology-related

16  markets is illustrative of Defendants' corporate conduct, which has included illegal activity aimed

17  at generating profits at the expense of consumers.

18      **D.**    **Government Investigations of Defendants**

19       81.    The DOJ is currently investigating several Defendants for alleged price-fixing in

20  the Lithium-ion Rechargeable Battery industry.

21       82.    In its Form 20-F for the fiscal year ended March 31, 2011 filed with the U.S.

22  Securities and Exchange Commission on June 28, 2011, Defendant Sony Corporation disclosed

23  that its wholly-owned U.S. subsidiary, Defendant Sony Electronics, Inc., received a subpoena

24  from the DOJ seeking information about its secondary batteries business.  Specifically, Sony

25  stated:

26        In May 2011, Sony Corporation's U.S. subsidiary, Sony Electronics, Inc., received
          a subpoena from the U.S. Department of Justice ("DOJ") Antitrust Division

27        seeking information about its secondary batteries business.  Sony understands that
          the DOJ and agencies outside the United States are investigating competition in the

28        secondary batteries market.  Based on the stage of the proceedings, it is not

possible to estimate the amount of loss or range of possible loss, if any, that might result from adverse judgments, settlements or other resolution of this matter.

Sony Corp., Annual Report (Form 20-F), at 113 (Mar. 31, 2011).

83.     In or around August 2012, LG Chem confirmed that it was under investigation by the DOJ for price-fixing Lithium-ion Rechargeable Batteries.  Around the same time, a local Korean newspaper reported that the DOJ had been investigating LG Chem and Samsung SDI since the first half of 2011, and was also investigating Panasonic.

84.     It is significant that the DOJ's investigation into price-fixing in the Lithium-ion Rechargeable Battery market is criminal rather than civil.  The DOJ's Antitrust Division Manual states that "[i]n general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, *per se* unlawful agreements such as price fixing, bid rigging, and customer and territorial allocations."[3]

85.     Before the DOJ engages in a criminal investigation, a DOJ Antitrust Division attorney must prepare a memorandum requesting authority to conduct a grand jury investigation. The memorandum must set forth detailed information, including, *inter alia*:  (1) the companies, individuals, industry, and commodity involved; (2) the estimated amount of commerce involved on an annual basis; (3) the geographic area affected and the district where the investigation will be conducted; (4) the suspected violation and a summary of the supporting evidence; and (5) the significance of the violation from an antitrust enforcement standpoint.  The memorandum then must go through an extensive chain of review, from the section or field office chief to the Director of Criminal Enforcement to the Assistant Attorney General, who must ultimately approve the investigation.[4]

86.     Based on the DOJ's standards for conducting a criminal investigation into anticompetitive behavior, the existence of a criminal investigation into the Lithium-ion

---

[3] U.S. Department of Justice, Antitrust Division Manual, Ch. III.C.5, at 20 (4th ed. 2008), *available at* http://www.justice.gov/atr/public/divisionmanual/atrdivman.pdf.

[4] *Id.*, Ch.III.F, at 87-88.

1  Rechargeable Battery industry further supports the existence of the conspiracy alleged herein.

2  **V.    TRADE AND COMMERCE**

3      87.    During the Class Period, each Defendant, or one or more of its subsidiaries, sold

4  Lithium-ion Rechargeable Batteries in the United States in a continuous and uninterrupted flow of

5  interstate commerce and foreign commerce, including through and into this judicial district.

6      88.    During the Class Period, Defendants collectively controlled a vast majority of the

7  market for Lithium-ion Rechargeable Batteries in the United States.

8      89.    The business activities of Defendants substantially affected interstate trade and

9  commerce in the United States and caused antitrust injury in the United States.

10      90.    To the extent Defendants' conduct alleged herein occurred outside the United

11  States, such conduct involved import trade or import commerce, was directed at customers in the

12  United States, and had a direct, substantial, and reasonably foreseeable effect on import trade or

13  import commerce.

14  **VI.    CLASS ACTION ALLEGATIONS**

15      91.    Plaintiff brings this action on behalf of itself and all others similarly situated (the

16  "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  The Class is

17  defined as follows:

18          All persons and entities who directly purchased a Lithium-ion
            Rechargeable Battery in the United States from any Defendant or
19          any subsidiary or affiliate thereof, or any co-conspirator, between
            January 1, 2003 and at least December 31, 2011.  Excluded from the
20          Class are Defendants, their parent companies, subsidiaries and
            affiliates, any co-conspirators, all governmental entities, and any
21          judges or justices assigned to hear any aspect of this action.

22      92.    Plaintiff does not know the exact size of the Class because such information is in

23  the exclusive control of Defendants.  Due to the nature of the trade and commerce involved,

24  however, Plaintiff believes that the Class members are numerous and geographically dispersed

25  throughout the United States, rendering joinder of all Class members impracticable.

26      93.    There are questions of law or fact common to the Class, which questions relate to

27  the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a

28  result thereof.  These questions of law or fact common to the Class include, but are not limited to:

847396.6

1         a.     whether Defendants engaged in a contract, combination, and/or conspiracy

2 to fix, raise, maintain, or stabilize prices of Lithium-ion Rechargeable Batteries sold in the United

3 States;

4         b.     whether Defendants engaged in a contract, combination, and/or conspiracy

5 to restrict output of Lithium-ion Rechargeable Batteries sold in the United States;

6         c.     whether Defendants' conduct caused the prices of Lithium-ion

7 Rechargeable Batteries sold in the United States to be at artificially high and noncompetitive

8 levels;

9         d.     whether Plaintiff and the other members of the Class were injured by

10 Defendants' conduct, and, if so, the appropriate classwide measure of damages for Class members;

11 and

12         e.     whether Plaintiff and the Class are entitled to, among other things,

13 injunctive relief, and if so, the nature and extent of such injunctive relief.

14     94.     These and other questions of law and fact are common to the Class, and

15 predominate over any questions affecting only individual Class members.

16     95.     Plaintiff's claims are typical of the claims of the Class because Plaintiff directly

17 purchased Lithium-ion Rechargeable Batteries from one or more of the Defendants during the

18 Class Period.

19     96.     Plaintiff will fairly and adequately represent the interests of the Class in that

20 Plaintiff is a direct purchaser of Lithium-ion Rechargeable Batteries and has no conflict with any

21 other members of the Class. Furthermore, Plaintiff has retained competent counsel experienced in

22 antitrust, class action, and other complex litigation.

23     97.     Defendants have acted on grounds generally applicable to the Class, thereby

24 making final injunctive relief appropriate with respect to the Class as a whole.

25     98.     This class action is superior to the alternatives, if any, for the fair and efficient

26 adjudication of this controversy. Prosecution as a class action will eliminate the possibility of

27 repetitive litigation. There will be no material difficulty in the management of this case as a class

28 action.

99.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VII.     FRAUDULENT CONCEALMENT

100.    Defendants engaged in a successful combination or conspiracy to fix and raise prices, which by its nature was inherently self-concealing. Defendants engaged in a secret conspiracy that did not give rise to facts that would put Plaintiff or the Class on inquiry notice that there was a conspiracy to fix the prices of Lithium-ion Rechargeable Batteries.

101.    During the relevant period, Plaintiff had neither actual nor constructive knowledge of the facts supporting its claim for relief despite diligence in trying to discover the pertinent facts. Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until at least June 28, 2011, when investigations by the DOJ became public. Although Plaintiff exercised due diligence throughout the Class Period, Plaintiff did not and could not have discovered Defendants' unlawful combination or conspiracy at any earlier date.

102.    During the relevant period, Defendants made false public statements that suggested the market for Lithium-ion Rechargeable Batteries was competitive rather than subject to the conspiracy alleged herein. For example, in an April 9, 2003 article titled, "Keen Competition in Mass-Production of Batteries," in Korean newspaper JoongAng Daily, an official of Samsung SDI was quoted as describing Samsung's "plan to mass-produce about 200,000 cell[s] from this month" and "prospects to increase the mass-production up to one million cell[s]," in order to compete and become the second largest Lithium-ion Rechargeable Battery producer in the world. By this time, however, the conspiracy alleged herein was already in place.

103.    Likewise, in a February 2, 2004 presentation to investors titled "2003 Business Results & 2004 Outlook," LG Chem declared its "[a]im to enter Top-tier [of the rechargeable battery market] by '05 through expanding customer bases with product differentiation and preceding R&D." In a section of the presentation titled "Competition Status," LG Chem described the Lithium-ion Rechargeable Battery market as "aggressive," with its competitors focused on

25

1    "capacity expansion," "intensive investment," and a "[s]trategy to sustain [a] leading position."

2    104.    As a result of Defendants' fraudulent concealment of their conspiracy, the running

3 of any statute of limitations has been tolled with respect to any claims Plaintiff or the Class

4 members have arising from the anticompetitive conduct alleged in this Complaint.

5 **VIII.**    **CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1**

6    105.    Plaintiff incorporates by reference all of the above allegations as if fully set forth

7 herein.

8    106.    Beginning no later than January 1, 2003, the exact date being unknown to Plaintiff

9 and exclusively within the knowledge of Defendants, Defendants and their co-conspirators entered

10 into a continuing contract, combination, or conspiracy to unreasonably restrain trade and

11 commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or

12 eliminating competition in the United States.

13    107.    In particular, Defendants combined and conspired to raise, fix, maintain, and/or

14 stabilize the prices of Lithium-ion Rechargeable Batteries sold in the United States.

15    108.    As a result of Defendants' unlawful conduct, prices for Lithium-ion Rechargeable

16 Batteries were raised, fixed, maintained, and stabilized in the United States.

17    109.    The contract, combination, or conspiracy among Defendants consisted of a

18 continuing agreement, understanding, and concerted action among Defendants and their co-

19 conspirators.

20    110.    For purposes of formulating and effectuating their contract, combination, or

21 conspiracy, Defendants did those things they contracted, combined, or conspired to do, including:

22        a.    participating in meetings and conversations to discuss the prices and supply

23 of Lithium-ion Rechargeable Batteries;

24        b.    agreeing to manipulate prices and supply of Lithium-ion Rechargeable

25 Batteries sold in the United States in a manner that deprived Class members of free and open

26 competition;

27        c.    allocating the market for Lithium-ion Rechargeable Batteries; and

28        d.    selling Lithium-ion Rechargeable Batteries to customers in the United

1   States at non-competitive prices; and

2       111.    As a result of Defendants' unlawful conduct, Plaintiff and the other members of the

3   Class were injured in their businesses and property in that they paid more for Lithium-ion

4   Rechargeable Batteries than they otherwise would have paid in the absence of Defendants'

5   unlawful conduct.

6   **IX.   PRAYER FOR RELIEF**

7       WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of

8   the Class herein, adjudging and decreeing that:

9       1.      This action may proceed as a class action, with Plaintiff as the designated Class

10  Representative and its counsel as Class Counsel;

11      2.      Defendants have engaged in a contract, combination, or conspiracy in violation of

12  Section 1 of the Sherman Act (15 U.S.C. § 1), and Plaintiff and the Class have been injured in

13  their businesses and property as a result of Defendants' violations;

14      3.      Plaintiff and members of the Class shall recover damages sustained by them, as

15  provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff

16  and the Class be entered against Defendants in an amount to be trebled in accordance with such

17  laws;

18      4.      Defendants, their subsidiaries, affiliates, successors, transferees, assignees, and the

19  respective officers, directors, partners, agents, and employees thereof and all other persons acting

20  or claiming to act on their behalf be permanently enjoined and restrained from continuing and

21  maintaining the combination, conspiracy, or agreement alleged herein;

22      5.      Plaintiff and members of the Class be awarded pre-judgment and post-judgment

23  interest, and that such interest be awarded at the highest legal rate from and after the date of

24  service of the initial Complaint in this action;

25      6.      Plaintiff and members of the Class shall recover their costs of this suit, including

26  reasonable attorneys' fees as provided by law; and

27      7.      Plaintiff and members of the Class receive such other or further relief as may be

28  just and proper.

847396.6

27

COMPLAINT

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

DATED: November 5, 2012          By: _____

                                        BRUCE L. SIMON

BRUCE L. SIMON (Bar No. 96241)
    bsimon@pswplaw.com
ROBERT G. RETANA (Bar No. 148677)
    rretana@pswplaw.com
AARON M. SHEANIN (Bar No. 214472)
    asheanin@pswplaw.com
WILLIAM J. NEWSOM (Bar No. 267643)
    wnewsom@pswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433 9000
Facsimile:  (415) 433 9008

CLIFFORD H. PEARSON (Bar No. 108523)
    cpearson@pswplaw.com
DANIEL L. WARSHAW (Bar No. 185365)
    dwarshaw@pswplaw.com
BOBBY POUYA (Bar No. 245527)
    bpouya@pswplaw.com
ALEXANDER R. SAFYAN (Bar No. 277856)
    asafyan@pswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

STEVEN T. GUBNER (Bar No. 156593)
    sgubner@ebg-law.com
**EZRA BRUTZKUS GUBNER LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: (818) 827-9000
Facsimile:  (818) 827-9090

*Attorneys for Plaintiff ALFRED H. SIEGEL, in his capacity as Liquidating Trustee of the Circuit City Stores, Inc. Liquidating Trust*