EXHIBIT A

ORIGINAL
FILED

2012 DEC 19  A 11: 31

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTH DIST. OF CALIF. OAKLAND

1   ERIC H. GIBBS (SBN: 178658)
    ELIZABETH C. PRITZKER (SBN: 146267)
2   JANICE S. YI (SBN: 255645)
    SCOTT M. GRZENCZYK (SBN: 279309)
3   **GIRARD GIBBS LLP**
    601 California Street, 14th Floor
4   San Francisco, CA 94108
    Telephone: (415) 981-4800
5   Facsimile:  (415) 981-4846
6   Email: ehg@girardgibbs.com; ecp@girardgibbs.com;
             jsy@girardgibbs.com; smg@girardgibbs.com

7

8   *Counsel for Plaintiff Lloyd Ranola*

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12  LLOYD RANOLA, Individually and on Behalf      Case No:_____
    of All Others Similarly Situated,
13
14                              Plaintiff,         **CLASS ACTION COMPLAINT**
15            v.
16  HITACHI LTD., HITACHI MAXELL, LTD.,
    MAXELL CORPORATION OF AMERICA, LG    **DEMAND FOR JURY TRIAL**
17  CHEM, LTD., LG CHEM AMERICA, INC.,
    PANASONIC CORPORATION, PANASONIC
18  CORPORATION OF NORTH AMERICA
    (F/K/A MATUSHITA ELECTRIC
19  CORPORATION OF AMERICA), SANYO
    ELECTRIC CO., LTD., SANYO NORTH
20  AMERICA CORPORATION, SAMSUNG SDI
    CO., LTD., SAMSUNG SDI AMERICA, INC.,
21  SONY CORPORATION, SONY ENERGY
    DEVICES CORPORATION, SONY
22  ELECTRONICS, INC.,

23                              Defendants.

24

25

26

27

28                        CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.      This case arises out of an alleged contract, combination or conspiracy among Defendants to fix, raise, maintain or stabilize the prices of Lithium Ion Rechargeable Batteries purchased directly from one of the Defendants or their affiliates by Plaintiff and other persons, from during the period from approximately January 1, 2002 to the present (the "Class Period").

2.      Lithium Ion Rechargeable Batteries were first introduced in the mid-1990s, quickly became the most popular type of rechargeable battery, and now serve as the main power sources for cell phones, laptop computers and other electronic products.

3.      Defendants are the leading manufacturers of Lithium Ion Rechargeable Batteries. Defendants control the majority of the multi-billion dollar Lithium Ion Rechargeable Battery market which, in 2011 alone, generated over $14 billion in gross sales revenue.

4.      The United States Department of Justice ("DOJ") has launched an investigation regarding anticompetitive conduct in the Lithium Ion Rechargeable Battery market.  Many of the Defendants named in this complaint have received subpoenas from the Antitrust Division of the DOJ related to their "secondary battery" business.  Additionally, several of the Defendants have confirmed that they are under investigation by the DOJ for potential price fixing with respect to the sale of rechargeable batteries in the United States.  These Defendants also have a history of engaging in anticompetitive acts to the detriment of American consumers.  They have, for example, plead guilty and been assessed fines for fixing prices for components used in consumer electronic products, including dynamic random access memory ("DRAM"), Thin-Film Transistor Liquid Display (TFT-LCD) display panels (commonly referred to simply as "LCDs"), optical disk drives ("ODDs"), cathode ray tubes ("CRTs"), among others.

5.      As was the case with the above-described conspiracies, Plaintiff alleges that the Defendants named herein entered into an agreement, contract or conspiracy with the purpose and effect of manipulating or stabilizing the prices for and allocating markets and/or customers with respect to Lithium Ion Rechargeable Batteries during the Class Period.

1

CLASS ACTION COMPLAINT

1      6.    Plaintiff further alleges that, during the Class Period, as result of Defendants' unlawful

2  conduct, Plaintiff and other members of the Class (as defined in paragraph 86 below) paid artificially

3  inflated prices for Lithium Ion Rechargeable Batteries.

4      7.    Plaintiff brings this antitrust action on behalf of himself and other direct purchasers of

5  Lithium Ion Rechargeable Batteries against Defendants for violations of Section 1 of the Sherman Act,

6  15 U.S.C. § 1. Plaintiff seeks damages and equitable relief from Defendants' anticompetitive conduct.

**JURISDICTION AND VENUE**

8      8.    Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§

9  15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for

10  Defendants' violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The Court has subject

11  matter jurisdiction pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. §§

12  1331 and 1337. This court also has jurisdiction pursuant to 28 U.S.C. § 1332 and the Class Action

13  Fairness Act of 2005, 28 U.S.C. § 1711, *et seq.* as both the $5 million amount-in-controversy and

14  diversity of citizenship requirements are satisfied.

15      9.    Venue is proper in this federal judicial district under 15 U.S.C. §§ 15 and 22, and 28

16  U.S.C. § 1391(b) and (c) because, during the Class Period, at least one of the Defendants resided in this

17  district, Defendants transacted business in this district, a substantial part of the events giving rise to

18  Plaintiff's claims occurred in this district, and a substantial portion of the affected interstate trade and

19  commerce described below has been carried out in this district.

**INTRADISTRICT ASSIGNMENT**

21      10.    Assignment to the San Francisco / Oakland division is proper under North District Local

22  Rules 3-2(c) & (d) as a substantial part of the events that are the subject of the litigation occurred in that

23  division.

2

CLASS ACTION COMPLAINT

**PARTIES**

**A.   Plaintiff**

11.     Plaintiff Lloyd Ranola is a resident of Oakland, California.   During the Class Period, Plaintiff purchased Lithium Ion Rechargeable Batteries directly from one or more of the named Defendants and suffered injury as a result of Defendants' conduct alleged herein.

**B.   Defendants**

**Hitachi Defendants**

12.     Defendant Hitachi, Ltd. is a Japanese company with its principal place of business at 6-6, Marunouchi 1 chome, Chiyoda-ku, Tokyo, 100-8280, Japan.   Defendant Hitachi, Ltd. manufactures and sells Lithium Ion Rechargeable Batteries through its Components and Devices Business Unit.

13.     Defendant Hitachi Maxell, Ltd. is a Japanese corporation with its principal place of business at 2-18-2 Iidabashi, Chiyoda-ku, Tokyo, 102-8521 Japan.   Defendant Hitachi-Maxell, Ltd. is a wholly owned subsidiary of Defendant Hitachi, Ltd.   Hitachi-Maxell, Ltd. was founded in 1960 and manufactures and sells batteries through its batteries business unit.

14.     Defendant Maxell Corporation of America is a New Jersey corporation with its principal place of business at 3 Garret Mountain Plaza, 3rd Floor, Suite 300, Woodland Park, New Jersey, 07424.

15.     Defendants Hitachi, Ltd., Hitachi-Maxell, Ltd., and Maxell Corporation of America are referred to collectively as "Hitachi."

**LG Chem Defendants**

16.     Defendant LG Chem, Ltd. is a Korean corporation with its principal place of business at 20 Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea.   Defendant LG Chem, Ltd. is an affiliate of Seoul-based conglomerate LG Electronics.   LG Chem, Ltd. is one of the world's leading manufacturers of Lithium Ion Rechargeable Batteries.

17.     Defendant LG Chem America, Inc. is a New Jersey corporation with its principal place of business at 910 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.   Defendant LG Chem America is a wholly owned subsidiary of Defendant LG Chem, Ltd.

3

CLASS ACTION COMPLAINT

1   18.   Defendants LG Chem, Ltd. and LG Chem America are referred to collectively as "LG

2   Chem."

3   **Panasonic Defendants**

4   19.   Defendant Panasonic Corporation is a Japanese corporation with its principal place of

5   business at 1006 Oaza Kadoma, Osaka 571-8501, Japan. Until approximately October 1, 2008,

6   Panasonic Corporation was known as Matsushita Electric Industrial Co., Ltd. Defendant Panasonic

7   manufactures and sells Lithium Ion Rechargeable Batteries under the Panasonic name and through its

8   wholly owned subsidiary Sanyo Electric Co., Ltd. With respect to those batteries sold under the

9   Panasonic name, they are produced by Panasonic's internal division called "Energy Company."

10  Defendant Panasonic Corporation is one of the world's leading manufacturers of Lithium Ion

11  Rechargeable Batteries.

12  20.   Defendant Panasonic Corporation of North America, formerly known as Matsushita

13  Electric Corporation of America, is a Delaware Corporation with its principal place of business at 1

14  Panasonic Way, Secaucus, New Jersey, 07094. Panasonic Corporation of North America is a wholly

15  owned and controlled subsidiary of Defendant Panasonic Corporation.

16  21.   Defendant Sanyo Electric Co., Ltd. is a Japanese corporation with its principal place of

17  business at 5-5 Keihan-Hondori, 2-chome, Moriguchi, Osaka 570-8677, Japan. Defendant Sanyo

18  Electric Co., Ltd. is one of the largest manufacturers and suppliers of Lithium Ion Rechargeable

19  Batteries in the world. As of December 9, 2009, Defendant Sanyo Electric Co., Ltd. became a wholly

20  owned subsidiary of Defendant Panasonic Corporation.

21  22.   Defendant Sanyo North America Corporation is a Delaware corporation with its principal

22  place of business offices at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo North

23  America Corporation is a wholly owned subsidiary of Defendant Sanyo Electric Co., Ltd.

24  23.   Defendants Panasonic Corporation, Panasonic Corporation of North America, Sanyo

25  Electric, Co., Ltd., and Sanyo North America Corporation are referred to collectively as "Panasonic."

26

27                                        4

**Samsung Defendants**

24.     Defendant Samsung SDI Co., Ltd. is a Korean corporation with its principal place of business at 673-7 Maetandong, Youngton-gu, Suwon, Korea.  Defendant Samsung SDI is 20% owned by the Korean conglomerate Samsung Electronics, Inc.  Defendant Samsung SDI is the world's largest manufacturer of Lithium Ion Rechargeable Batteries.

25.     Defendant Samsung SDI America, Inc. is a California corporation with its principal place of business at 85 W. Tasman Drive, San Jose, California 95134-1703. Samsung SDI America is a wholly owned subsidiary of Defendant Samsung SDI.

26.     Defendants Samsung SDI and Samsung SDI America are referred to collectively as "Samsung."

**Sony Defendants**

27.     Defendant Sony Corporation is a Japanese corporation with its principal place of business at 1-7-1 Konan, Minato-Ku, Tokyo 108-0075, Japan.  Defendant Sony Corporation invented the Lithium Ion Rechargeable Battery and is one of the world's leading suppliers of Lithium Ion Rechargeable Batteries.

28.     Defendant Sony Energy Devices Corporation is a Japanese corporation with its principal place of business at 1-1 Shimosugishita, Takakura, Hiwada-machi, Koriyama-shi, Fukushima, Japan. Defendant Sony Energy Devices Corporation is a wholly owned subsidiary of defendant Sony Corporation.  Sony Corporation manufactures its Lithium Ion Rechargeable Batteries through its Sony Energy Devices Corporation subsidiary.

29.     Defendant Sony Electronics, Inc. is a Delaware corporation with its principal place of business at 16530 Via Esprillo, San Diego, California 92127.  Defendant Sony Electronics, Inc. is a wholly owned subsidiary of defendant Sony Corporation.

30.     Defendants Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics, Inc. are referred to collectively as "Sony."

5

## CO-CONSPIRATORS

31.     Various persons or entities not named as Defendants participated as co-conspirators in the wrongful conduct and violations of law alleged herein and performed acts or made statements in furtherance thereof. Following additional investigation and the opportunity for discovery, Plaintiff may seek leave to name additional persons or entities as Defendants as a later date.

32.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the act, transactions, violations and common course of conduct alleged herein.

## THE LITHIUM ION RECHARGEABLE BATTERY MARKET

33.     Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling Lithium Ion Rechargeable Batteries in the United States.

34.     The secondary[1] or rechargeable battery market generally is comprised of four types of batteries: (1) Lithium Ion; (2) lead-acid; (3) nickel cadmium ("NiCad"); and (4) nickel-metal hydride ("NiMH"). Lithium Ion Rechargeable Batteries are used in a variety of consumer electronic products, and are by far the most popular secondary battery on the market. Today, roughly 50% of all Lithium Ion Rechargeable Batteries are used to power mobile phones and notebook computers. The rest are used to power digital cameras, power tools, and other consumer electronic devices. In recent years, Lithium Ion Rechargeable Batteries also have been used to power electric and hybrid automobiles.

35.     Lithium Ion Rechargeable Batteries generally are divided into four different types: (1) small cylindrical, (2) large cylindrical, (3) soft, flat units referred to as a pouch, and (4) prismatic.

36.     In addition to the four types of Lithium Ion Rechargeable Batteries described above, there are also lithium ion polymer batteries. Lithium ion polymer batteries have evolved technologically from Lithium Ion Rechargeable Batteries. The primary difference is that the lithium-salt electrolyte in a

---

[1]  Batteries are either primary or secondary. "Primary batteries" can be used only once because the chemical reactions that supply the electrical current are irreversible. "Secondary batteries" can be used, charged and reused. In secondary batteries, the chemical reactions that supply electrical current are readily reversed, so that the batteries can be recharged after use to their original pre-discharge condition.

CLASS ACTION COMPLAINT

1  lithium ion polymer battery is held in a solid polymer composite or film, rather than in an organic

2  solvent. The polymer exterior casing of a lithium ion polymer battery makes it more flexible in terms of

3  shape, and thus offers the advantage of being able to tailor the battery shape to fit a particular design or

4  device.

5      37.    Lithium Ion Rechargeable Batteries, as defined above, includes cylindrical, prismatic,

6  pouch and lithium ion polymer batteries. Each Defendant named herein manufactures and markets each

7  of these types of Lithium Ion Rechargeable Batteries.

8      38.    Lithium Ion Rechargeable Batteries have unique properties and advantages that make

9  them superior to all other types of secondary batteries.

10     39.    First, unlike other forms of secondary batteries (such as NiCad or NiMH), Lithium Ion

11 Rechargeable Batteries are the only secondary batteries that do not suffer from any "memory effect."

12 For example, if a NiCad battery is charged repeatedly to 70% capacity, over time the discharge voltage

13 will begin to fall such that the battery effectively remembers 70% as representing full capacity. Lithium

14 Ion Rechargeable Batteries, on the other hand, do not suffer from this memory effect, and there is no

15 risk of that partially charging a battery will reduce its maximum capacity.

16     40.    Second, Lithium Ion Rechargeable Batteries are more powerful than other types of

17 secondary batteries. For example, the nominal voltage of a NiMH rechargeable battery is 1.2 volts,

18 while the nominal voltage of a Lithium Ion Rechargeable Battery is 3.7 volts.

19     41.    Third, Lithium Ion Rechargeable Batteries possess a higher per weight and per volume

20 energy density than other types of secondary batteries. This means that a lighter and smaller Lithium

21 Ion Rechargeable Battery can generate the same amount of electricity as a heavier version of a different

22 type of secondary battery. For example, Lithium Ion Rechargeable Batteries are as much as 70%

23 lighter, and 60% smaller in volume, than NiMH batteries while delivering the same amount of electrical

24 power.

25     42.    Fourth, Lithium Ion Rechargeable Batteries retain their charge better than other types of

26 secondary batteries. For example, Lithium Ion Rechargeable Batteries lose only about 5% of their

27

28

7

1 | charge per month when idle.  Other types of secondary batteries, like NiMH batteries, for example, lose
2 | nearly 20% of their charge per month when idle.

3 | 43.    As a result of these and other unique performance characteristics, Lithium Ion
4 | Rechargeable Batteries have become the most popular type of secondary battery.[2]  The chart below
5 | compares Lithium Ion Rechargeable Batteries to other secondary batteries, in terms of the percentage of
6 | sales of all secondary batteries sold worldwide over the approximately 16-year period between 1991 and
7 | 2007.

8 | 44.    As shown below, Lithium Ion Rechargeable Batteries (inclusive of lithium ion polymer
9 | batteries) comprised only a fraction of total global sales of secondary batteries in the early 1990's. In
10 | less than a decade, by 2002, Lithium Ion Rechargeable Battery sales accounted for nearly 60% of all
11 | global secondary battery sales.  By 2007, the percentage sales of Lithium Ion Rechargeable Batteries
12 | had grown substantially, comprising approximately 80% of total sales of secondary batteries worldwide.

**FIGURE 1**



Chart showing sales of rechargeable batteries worldwide from 1991 through 2007. Values are expressed as percentage of total global sales of rechargeable batteries. Data are from Wilburn (2007) and Takashita (2008).

---

[2]  Thomas Goonan, Lithium use in batteries: U.S. Geological Survey Circular 1371, p. 4 (2012) *available at* http://pubs.usgs.gov/circ/1371/pdf/circ1371_508.pdf (last visited November 8, 2012).

8

CLASS ACTION COMPLAINT

45.     Lithium Ion Rechargeable Batteries also are fungible, highly standardized products which are interchangeable among the same type and across manufacturers. International standard-setting organizations, such as the Underwriters Laboratories, the International Electrotechnical Commission and the Institute of Electrical and Electronics Engineers, develop and publish specifications for the design, manufacture and use application of Lithium Ion Rechargeable Batteries, in order to encourage greater product interoperability and compatibility, and establish common standards for acceptable product safety, quality and reliability. Defendants and other manufacturers of Lithium Ion Rechargeable Batteries follow these standards and specifications when designing and developing their batteries so that products which use Lithium Ion Rechargeable Batteries can be developed to accommodate a specific Lithium Ion Rechargeable Battery.

46.     Demand for Lithium Ion Rechargeable Batteries is inelastic because there are no other substitutes for these products, due to their performance characteristics.

47.     There are substantial barriers to entry into the market for Lithium Ion Rechargeable Batteries. A new market entrant would face costly and lengthy start-up costs, including multi-million dollar costs (that would likely exceed $100 million) associated with research and development, manufacturing plants, infrastructure, and equipment, among other things. New entrants also would need to comply with various environmental regulations which involves extensive testing and lengthy government approval processes.

48.     The Lithium Ion Rechargeable Battery market is highly concentrated. During the Class Period, the Defendants named herein accounted for over 70% of the market.

49.     The characteristics of the Lithium Ion Rechargeable Battery market – concentration among a few dominant manufacturers, high barriers to entry, and inelasticity of demand – make it highly susceptible to collusion.

## TRADE AND COMMERCE

50.     During the Class Period, the Defendants named herein marketed, sold, distributed or shipped substantial quantities of Lithium Ion Rechargeable Batteries in a continuous and uninterrupted

9

1 flow of interstate and international commerce to customers located throughout the United States,

2 including states other than where the Defendants are located.

3      51.    The activities of Defendants, as described herein, were within the flow of, and

4 substantially affected, interstate trade and commerce. In the conduct of their businesses, Defendants

5 directly or indirectly have used the means and instrumentalities of interstate commerce in furtherance of

6 the acts alleged herein. Defendants and their co-conspirators sell Lithium Ion Rechargeable Batteries

7 through various direct channels, including though websites and brick and mortar retail outlets.

8      52.    Defendants engaged in conduct both inside and outside of the United States that caused

9 direct, substantial, and reasonably foreseeable and intended anti-competitive effects on interstate

10 commerce within the United States. Defendants' conspiracy adversely affected persons in the United

11 States who purchased Lithium Ion Rechargeable Batteries for personal use and not for resale, including

12 Plaintiff and members of the class.

13 **SUBSTANTIVE ALLEGATIONS**

14 **A.    Competition In the Market for Lithium Ion Rechargeable Batteries Resulted In Price
15 Decreases.**

16      53.    Sony first began the commercial production of Lithium Ion Rechargeable Batteries

17 around 1991. During the following eight years Sony and Panasonic, both Japanese manufacturers,

18 dominated the market for Lithium Ion Rechargeable Batteries. Prices for Lithium Ion Rechargeable

19 Batteries during this period, from approximately 1991 to late 1999, remained stable.

20      54.    In or around 1999, Sony and Panasonic began to face competition from lower cost

21 manufacturers in Korea. Beginning in approximately 1997, the Korean government began to put

22 significant resources into developing competing secondary battery technology. As a result of these

23 efforts, Korea established the second automated mass battery production system in the world. The

24 Battery R&D Association of Korea took the lead in the "small-size secondary battery development

25 project" together with 11 manufacturers, 10 universities and research centers, investing 54.87 billion

26 won (roughly $50 million U.S. dollars) over 5 years from 1997 to 2002. Defendant Samsung SDI, a

27 10

28 CLASS ACTION COMPLAINT

1  chaebol,[3] Korea's largest manufacturer, and LG Chem, a unit of LG Group, the No. 2 chaebol, each

2  spent more than $300 million U.S. dollars on secondary battery manufacturing facilities during this

3  period.

4        55.  In 1999, Defendant LG Chem became the first Korean manufacturer of Lithium Ion

5  Rechargeable Batteries followed closely by Defendant Samsung SDI. The entry of Defendants Samsung

6  SDI and LG Chem changed the marketplace for Lithium Ion Rechargeable Batteries. Through

7  aggressive price competition, Korean Defendants Samsung SDI and LG Chem secured approximately

8  10% of the worldwide market for Lithium Ion Rechargeable Batteries in 2002. Samsung SDI and LG

9  Chem doubled their market share the following year, capturing nearly 20% of the market for Lithium

10  Ion Rechargeable Batteries in 2003.

11        56.  As a result of this competition, worldwide prices for Lithium Ion Rechargeable Batteries

12  began to decline sharply. During the two-year period from 2000-2002, the prices for Lithium Ion

13  Rechargeable Batteries fell by nearly 50%. Prices fell despite strong increases in demand for Lithium

14  Ion Rechargeable Batteries used to power popular consumer electronic devices, such as cell phones and

15  notebook computers.

16  **B.**    **Defendants Conspired to Stabilize the Prices for Lithium Ion Rechargeable Batteries.**

17        57.  Japanese Defendants Sony, Panasonic and Hitachi sought to stem the decline in prices for

18  Lithium Ion Rechargeable Batteries and their loss of market share from increased competition from

19  Korean Defendants Samsung SDI and LG Chem. In or around the end of 2001 and the beginning of

20  2002, Defendants entered into an illegal conspiracy to stabilize and raise prices for Lithium Ion

21  Rechargeable Batteries.

22        58.  As a result of the conspiracy, Defendants succeeded in ending years of price declines for

23  Lithium Ion Rechargeable Batteries. Indeed, by 2002, the dramatic decline in prices that had occurred

24  as a result of Korean Defendants Samsung SDI and LG Chem entering the Lithium Ion Rechargeable

25  Batteries market had completely stopped. In sharp contrast to the pricing patterns that occurred prior to

26  ————————————

[3] The chaebol are large, conglomerate Korean family-controlled firms.

27                               11

28                              CLASS ACTION COMPLAINT

1  the conspiracy, from approximately July 2002 through July 2008, the prices for Lithium Ion

2  Rechargeable Batteries steadily rose.

3       59.    The chart below shows the change in prices for Lithium Ion Rechargeable Batteries from

4  January 2000 through September 2011, including the price stabilization that began in 2002. [4]

**FIGURE 2**



20       60.    As depicted in **Figure 2**, above, from 2002 through 2008, prices for Lithium Ion

21  Rechargeable Batteries remained stable, despite decreasing costs and increasing production. During this

22  period, and continuing into the present, there have been significant technological advances in the

23  manufacture and design of Lithium Ion Rechargeable Batteries.   These advances brought about

24  substantial reductions in production costs.   At the same time that production costs were falling,

25  production output during this period steadily increased.   Declining production costs coupled with

[4]   Data compiled from the Bank of Korea Producer Price Index.

12

CLASS ACTION COMPLAINT

increases in production typically produce economies of scale that, in a competitive market, should result in price reductions.

61.   As a result of these and other factors, industry experts anticipated that the prices for Lithium Ion Rechargeable Batteries would continue to decline between 2002 and 2008.  For example, one projection indicated that the price-per-cell for Lithium Ion Rechargeable Batteries would decrease by approximately 7% per year from 2004-2008.[5]  The anticipated price declines for Lithium Ion Rechargeable Batteries, as reported by this industry analyst, are graphically depicted in **Figure 3**, below:

**FIGURE 3**



62.   In approximately 2008, due to a weakened economy, consumer spending on electronic devices fell sharply.  As a result of this decline in consumer demand, for the one year period from approximately July 2008 to May 2009, the prices for Lithium Ion Rechargeable Batteries fell  by approximately 35%. *See* **Figure 2**, above.

63.   To stem these price declines, Defendants agreed to cut production of Lithium Ion Rechargeable Batteries by roughly 60 percent.  By coordinating these reductions in supply and

[5]   Christophe Pillot, The Worldwide Rechargeable Battery Market 2003-2008, p. 20 (2004) *available at* http://www.rechargebatteries.org/MarketDataRechargeableBatteries.pdf (last visited November 8, 2012).

13

1  production of Lithium Ion Rechargeable Batteries, Defendants were able to stabilize prices for Lithium

2  Ion Rechargeable Batteries by the end of 2009. *See* **Figure 2**, above.

3        64.    A production cut by only one Defendant would not have been able to significantly affect

4  the market and/or prices of Lithium Ion Rechargeable Batteries. In order to achieve such a remarkable

5  end to the decline in prices and stabilize prices, coordinated conduct among the Defendants was

6  necessary. Once prices for Lithium Ion Rechargeable Batteries had stabilized, Defendants quickly

7  increased their production to approximately 103 million units per month without a significant

8  corresponding change in price.

9        65.    Prices for Lithium Ion Rechargeable Batteries remained stable from 2009 until mid-2011

10 (*see* **Figure 2**, above), when Defendants received notice that they were being investigated for price

11 fixing by the DOJ. Within three months of the disclosure of the DOJ investigation, prices for Lithium

12 Ion Rechargeable Batteries experienced an almost 10% decline. Such a decline in price is consistent

13 with the end of a conspiracy designed to artificially inflate and maintain prices.

14 A.    **Government Investigations Into the Defendants' Anticompetitive Conduct.**

15       66.    As described above, Defendants have been the target of a DOJ investigation regarding

16 anticompetitive conduct in the secondary (rechargeable) battery market since approximately mid-2011.

17 In a March 31, 2012, filing with the SEC, Sony reported that it had received a subpoena from the

18 Antitrust Division of the DOJ in May 2011, seeking information about Sony's secondary battery

19 business. Specifically, Sony disclosed:

> In May 2011, Sony Corporation's U.S. subsidiary, Sony Electronics, Inc.,
> received a subpoena from the U.S. Department of Justice ("DOJ")
> Antitrust Division seeking information about its secondary battery
> business. Sony understands that the DOJ and agencies outside the United
> States are investigating competition in the secondary batteries market.
> Based on the stage of the proceedings, it is not possible to estimate the
> amount of loss or range of possible loss, if any, that might result from
> adverse judgments, settlements or other resolutions of this matter.[6]

---

[6]  Sony Corporation Form 20-F, fiscal year ending March 31, 2012.

28                                    CLASS ACTION COMPLAINT

67.     Also in early 2012, according to a Korean news article, a source from the DOJ confirmed that it was conducting a criminal investigation into potential price-fixing in the secondary battery market, revealing further that the DOJ had been investigating these issues since the first half of 2011. The same article quoted the source as stating that the investigation was nearing its final stages and that criminal charges are likely to be filed.

68.     On or about August 20, 2012, LG Chem confirmed that it also was the target of the DOJ investigation.  Reports have also indicated that Samsung SDI and Panasonic are under investigation by the DOJ for price fixing in the secondary battery industry.

69.     It is significant that Defendants' anticompetitive behavior is the subject of a criminal grand jury investigation being conducted by the Department of Justice.  In order for the DOJ to institute a grand jury investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed and prepare a detailed memorandum to that effect.  Following a review of that memorandum, the request for a grand jury must be approved by the Assistant Attorney General for the Antitrust Division, based on the standard that a criminal violation may have occurred.  In addition, the fact that the DOJ Antitrust Division investigation is criminal, as opposed to civil, is significant.  The Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation" state: "[i]n general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, *per se* unlawful agreements such as price fixing, bid rigging and horizontal customer and territorial allocations."

70.     Thus, the existence of a criminal investigation into potential price fixing with respect to the sale of secondary batteries in the United States supports the existence of the contract, combination or conspiracy among the Defendants alleged in this complaint.

B.     **Defendants Have a History of Colluding to Fix Prices in Similar Markets.**

71.     Additionally, many of the Defendants have a long history of collusion in various consumer electronics markets, including antitrust investigations by various government agencies and admissions to participating in price-maintenance and other anticompetitive agreements.

72.     The Lithium Ion Rechargeable Battery market, like many of the markets in which Defendants have a history of price-fixing allegations and guilty pleas, is dominated by a small number of manufacturers. The Defendants' participation in price-fixing conspiracies in similar markets, some of which occurred during the Class Period and are described below, demonstrates Defendants' willingness to enter into such cartels, is suggestive of a corporate culture that encourages illegal activity and price-fixing, and supports the above allegations that the Defendants also participated in a price-fixing conspiracy in the Lithium Ion Rechargeable Battery market as alleged herein. Many of these prior conspiracies involve Defendants' departments, divisions, and personnel that have also been responsible for the development, marketing and distribution of Lithium Ion Rechargeable Batteries.

Televisions

73.     In February of 1993, the Japan Fair Trade Commission ("JFTC") entered a cease and desist order against the sales subsidiaries of Sony, Hitachi and what is now Panasonic. The JFTC found that the subsidiaries requested that large discount stores in Tokyo and Osaka stop displaying discount rates larger than 10 percent of the maker's recommended retail prices for products including televisions on price tags and handbills. The JFTC noted that similar practices had occurred in 1988 when it instructed two major industry associations, including the Japan Electronics Industry Association, to stop them.

DRAM

74.     In October of 2005, Samsung and its US subsidiary admitted guilt and paid a $300 million fine for participating in an international conspiracy to fix prices in the market for dynamic random access memory ("DRAM") from approximately April 1999 through June 2002. Additionally, seven Samsung executives agreed to plead guilty to participating in the conspiracy with respect to DRAM. Each executive agreed to pay a $250,000 criminal fine and serve a prison sentence in the United States ranging from seven to fourteen months.

16

CLASS ACTION COMPLAINT

75.     On May 19, 2010, the European Commission ("EC") settled claims against the companies that participated in the DRAM price-fixing cartel, including Samsung and Hitachi.  The settlements totaled €331 million and required the companies to acknowledge their participation in the conspiracy.

<u>Magnetic Videotapes</u>

76.     In November of 2007, the EC fined Sony and the Hitachi Maxell Limited joint venture $110 million for price fixing in the market for professional videotapes sold in Europe between 1999 and 2002.

<u>TFT-LCD</u>

77.     Samsung, LG and  Hitachi have also been the subject of investigation by the DOJ, EC, and JFTC regarding price-fixing in the market for TFT-LCD panels ("LCDs").  In December of 2008, the JFTC fined Sharp and Hitachi for their role in a conspiracy involving LCDs sold for use in Nintendo game consoles.  Around the same time, LG Display, a wholly owned Korean subsidiary of LG Electronics, pleaded guilty to DOJ allegations of price-fixing in the market for LCDs from approximately September 2001 through June 2006 and agreed to pay a $400 million fine.

78.     In 2009 an executive of LG Display agreed to plead guilty to participating in the global LCD price-fixing conspiracy, pay a $30,000 criminal fine, and serve 12 months in jail.  Later that year another LG Display executive also pled guilty to participating in the conspiracy.

79.     On March 10, 2009, the DOJ also announced that Hitachi Displays, Ltd. had pled guilty to participation in the price-fixing conspiracy from March 2004 through April 2011 and agreed to pay a $31 million fine.  In July of 2009, the EC confirmed that it had sent a Statement of Objections to participants in the LCD cartel in Europe.

80.     Although Samsung has not publicly acknowledged its participation in the price-fixing cartel, Samsung Electronics Corporation entered into a leniency agreement with the DOJ with respect to the DOJ's investigation into the TFT-LCD market, whereby Samsung admitted to its participation in the price-fixing cartel.

CLASS ACTION COMPLAINT

Cathode Ray Tubes

81.   On October 7, 2009, the JFTC issued a cease and desist order and levied $37.4 million in fines against five companies for their alleged participation in a price-fixing cartel for Cathode Ray Tubes ("CRTs"), including Panasonic, LG Philips Displays Korea Co. and Samsung SDI and their affiliates.   On November 26, 2009, the EC confirmed that it had sent a Statement of Objections to participants in the CRT cartel in Europe.   It has been reported that "[t]he EC believes that Chunghwa Picture Tubes (a unit of Tatung), LG Electronics, Matsushita (Panasonic), Philips, Samsung and Toshiba have formed cartels to boost pricing of CRT-based devices, such as computer monitors or TV-sets."   In November of 2007, Hitachi Canada Ltd., a subsidiary of Hitachi, received requests for information from the Canadian Competition Bureau with respect to alleged antitrust violations relating to CRTs.

82.   In approximately March 2011 Defendants Samsung SDI agreed to plead guilty and pay a $32 million fine for participating in a "global conspiracy to fix prices, reduce output, and allocate market share of color display tubes, a type of cathode ray tube used in computer monitors and other specialized applications . . . ."   Samsung SDI admitted it participated in the conspiracy from approximately January 1997 through at least March 2006.

Optical Disk Drives

83.   In September 2011, Hitachi-LG Data Storage, Inc. pled guilty and paid a $21.1 million fine for participating in various conspiracies to rig bids and fix prices for optical disk drives ("ODDs") from June 2004 through September 2009.   Three Hitachi-LG Data Storage executives also agreed to plead guilty, serve prison time, and pay fines for participating in the same conspiracy.

84.   Defendants' established illegal conduct in a wide variety of product markets around the world, including the United States, is illustrative of Defendants' respective corporate cultures, which encourage illegal activities aimed at improving the companies' bottom lines at the expense of everyday consumers.   Defendants and their high-level executives have repeatedly admitted their involvement in price-fixing conspiracies, pled guilty to criminal price-fixing charges, served prison time and/or paid substantial criminal fines to antitrust authorities in Japan, Canada, Europe and the United States.

18

CLASS ACTION COMPLAINT

85.     Defendants' illegal conduct is especially notable with respect to price-fixing of the chief components or technologies commonly used in notebook computers.  A notebook computer contains four key pieces of hardware:  (1) a DRAM chip; (2) an LCD screen; (3) an optical disc drive (or ODD); and (4) a Rechargeable Ion Lithium Battery.  Defendants have pled guilty to and/or been convicted of fixing the prices of the first three of these components (see above allegations with respect to DRAM, LCDs, ODDs), and the DOJ has confirmed that it is investigating whether to bring criminal price-fixing charges for the fourth component – Rechargeable Ion Lithium Batteries.

## CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this action on behalf of himself and as a class action pursuant to Federal Rules of Civil Procedure 23 on behalf of the following Class:

> All individuals and entities who, during the period from January 1, 2002 through the present ("Class Period") purchased Lithium Ion Rechargeable Batteries in the United States directly from one or more of the Defendants, their subsidiaries, or their affiliates.

87.     Excluded from the Class are Defendants; the subsidiaries and affiliates of any Defendant; any person or entity who is a partner, officer, director, or controlling person of any Defendant; members of Defendants' immediate families and their legal representatives, heirs, successors or assigns; and any entity in which any Defendant has or had a controlling interest.

88.     This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

89.     **Numerosity.**  Members of the Class are so numerous that their individual joinder is impracticable.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of Class members.  Plaintiff also believes that Class members are sufficiently numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

19

90. **Existence and predominance of common questions.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common questions include:

a. Whether Defendants engaged in a contract, combination or conspiracy to fix, maintain or stabilize the prices of, or allocate the market for, Lithium Ion Rechargeable Batteries sold in the United States;

b. Whether the alleged contract, combination or conspiracy violated Section 1 of the Sherman Act as alleged in the Claim for Relief below;

c. Whether Defendants' conduct as alleged herein caused Plaintiff and Class members to pay more for Lithium Ion Rechargeable Batteries than they otherwise would have paid in an unrestrained, competitive market; and

91. Whether Plaintiff and other members of the Class were injured by the conduct of Defendants and, if so, the appropriate class-wide measure of damages and appropriate relief.

92. **Typicality.** Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like other Class members, purchased at least one Lithium Ion Rechargeable Battery described in the Class definition directly from one of the Defendants; lost money or property and/or was damaged as a result of the same wrongful conduct of the Defendants as alleged herein; and seeks relief common to the Class.

93. **Adequacy.** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

94. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, while the damages suffered by individual Class members may be relatively small, the expense and

1    burden of individual litigation makes it impossible for members of the Class to individually redress the

2    wrongs done to them.

3       95.    Even if the Class members could afford such individualized litigation, the court system

4    could not. Individualized litigation would create the danger of inconsistent or contradictory judgments

5    and increase the delay and expense to all parties and the court system. By contrast, the class action

6    device presents far fewer management difficulties, is in fact manageable, and provides the benefits of

7    single adjudication, economies of scale, and comprehensive supervision by a single court. The benefits

8    of adjudicating this controversy as a class action far outweigh any difficulties that may occur in

9    managing the Class.

10       96.    In the alternative, the Class may be certified under the provisions of Federal Rules of

11    Civil Procedure 23(b)(1) and/or 23(c)(4) because:

12       a.    The prosecution of separate actions by the individual members of the Class would

13    create a risk of inconsistent or varying adjudications with respect to individual Class members and

14    would establish incompatible standards of conduct for defendants;

15       b.    The prosecution of separate actions by individual Class members would create a

16    risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests

17    of other Class members not parties to the adjudications, or substantially impair or impede the ability of

18    other Class members to protect their interests;

19       c.    Defendants have acted or refused to act on grounds generally applicable to the

20    Class, making final injunctive relief or corresponding declaratory relief with respect to the members of

21    the Class as a whole an appropriate form of relief; and

22       d.    The claims of Class members are comprised of common issues that are

23    appropriate for certification under Rule 23(c)(4).

24

25

26

27                          21

28                  CLASS ACTION COMPLAINT

<u>CLAIM FOR RELIEF</u>
(Against all Defendants for Violations of Section 1
of the Sherman Antitrust Act, 15 U.S.C. § 1)

97.     Plaintiff hereby incorporates by reference each preceding paragraph as fully set forth herein.

98.     Defendants, by and through their officers, directors, employees, agents or other representatives, entered into a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce beginning on or about January 1, 20012, the exact date being unknown to Plaintiff, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Defendants, by their unlawful conspiracy, artificially raised, inflated, maintained or stabilized the market price of Lithium Ion Rechargeable Batteries as alleged herein.

99.     The contract, combination or conspiracy consisted of a continuing agreement, understanding or concert of action among Defendants and their co-conspirators, the substantial purpose of which was to raise, fix, maintain or stabilize the prices of, or allocate the market for, Lithium Ion Rechargeable Batteries they sold in the United States.

100.     Defendants committed acts or made statements in furtherance of formulating and effectuating their contract, combination or conspiracy, including:

a.     participating in meeting and communications to discuss the price of Lithium Ion Rechargeable Batteries;

b.     agreeing to manipulate the prices of Lithium Ion Rechargeable Batteries to reverse the rapid price that resulted from increased competition;

c.     agreeing to reduce output for the purpose of artificially stabilizing the prices for Lithium Ion Rechargeable Batteries; and

d.     selling Lithium Ion Rechargeable Batteries to customers in the United States at non-competitive prices.

101.     Defendants contract, combination or conspiracy had the following effects, among others:

22

CLASS ACTION COMPLAINT

1           a.     price competition in the sale of Lithium Ion Rechargeable Batteries by

2  Defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the

3  United States;

4           b.     prices for Lithium Ion Rechargeable Batteries have been raised, fixed, maintained

5  or stabilized at artificially high and noncompetitive levels throughout the United States; and

6           c.     direct purchasers of Lithium Ion Rechargeable Batteries from Defendants have

7  been deprived of the benefit of free and open competition in the purchase of Lithium Ion Rechargeable

8  Batteries.

9      102.   As a direct result of the unlawful conduct of Defendants and their co-conspirators in

10  furtherance of their continuing contract, combination or conspiracy, Plaintiff and other members of the

11  Class have been injured in their business and property in that they paid more for Lithium Ion

12  Rechargeable Batteries than they would have paid in the absence of Defendants' illegal conduct.

13  **DAMAGES**

14      103.   During the Class Period, Plaintiff and the other members of the Class purchased Lithium

15  Ion Rechargeable Batteries directly from Defendants, or their subsidiaries, agents or affiliates and, by

16  reason of the antitrust violations herein alleged, paid more for such products than they would have paid

17  in the absence of such antitrust violations.

18      104.   As a result, Plaintiff and the other members of the Class have sustained damages to their

19  business and property in an amount to be determined at trial.

20  **FRAUDULENT CONCEALMENT**

21      105.   Throughout the Class Period, Defendants engaged in a successful, illegal conspiracy that

22  was self-concealing.  Defendants' conspiracy involved a continual course of conduct and made

23  representations that were intended to and did conceal their conspiracy regarding the pricing of Lithium

24  Ion Rechargeable Batteries.

25      106.   As a result, Plaintiff and members of the Class were unaware of Defendants' unlawful

26  conduct and did not know that they were paying artificially high prices for Lithium Ion Rechargeable

27

28  CLASS ACTION COMPLAINT

1 Batteries throughout the United States during the Class Period. Plaintiff and members of the Class did

2 not discover and could not discover through the exercise of reasonable diligence the existence of the

3 conspiracy alleged herein until mid-2011, when it was first publicly reported that manufacturers of

4 Lithium Ion Rechargeable Batteries were under investigation by the Department of Justice and other

5 agencies for anticompetitive conduct.

6      107.   Plaintiff has exercised due diligence by promptly investigating the fact giving rise to his

7 claims upon having reasonable suspicion of the existence of Defendants' conspiracy. Plaintiff and

8 members of the Class could not have discovered the alleged contract, combination, or conspiracy at an

9 earlier date by the existence of reasonable diligence because of Defendants' unlawful conspiratorial

10 conduct. Furthermore, prior to mid-2011 Plaintiff and members of the Class reasonably considered the

11 market for Lithium Ion Rechargeable Batteries to be a well-regulated and competitive industry where

12 competitive pricing prevailed.

13      108.   As a result of Defendants' fraudulent conspiracy, the running of any statute of limitations

14 has been tolled with respect to any claims that Plaintiff and member of the Class have as a result of the

15 anticompetitive conduct alleged in this complaint.

16 **PRAYER FOR RELIEF**

17     WHEREFORE, Plaintiff prays that:

18     A.   The Court determine that his action may be maintained as a class action pursuant to Rule

19 23 of the Federal Rules of Civil Procedure, and enter an order appointing Plaintiff as class representative

20 for the Class and appointing Plaintiff's counsel as Class Counsel;

21     B.   The acts and practices herein alleged be adjudged and decreed to violate Section 1 of the

22 Sherman Act, and that Defendants be enjoined from further violative conduct;

23     C.   Plaintiff and each member of the Class recover damages, as provided by law, determined

24 to have been sustained by each of them, in an amount to be trebled in accordance with the antitrust laws;

25     D.   Plaintiff and the Class recover their costs of suit, including reasonable attorneys' fees,

26 litigation costs and expert fees as provided by law;

27

24

28

CLASS ACTION COMPLAINT

1    E.    Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the
2  respective officers, directors, partners, agents and employees thereof, and all other persons acting or
3  claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining
4  the contract, combination, conspiracy or agreement alleged herein;

5    F.    Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest,
6  and that such interest be awarded at the highest legal rate from and after the date of service of the initial
7  complaint in this action;

8    G.    Judgment be entered against Defendants and in favor of Plaintiff and the Class; and

9    H.    Plaintiff and the Class be granted such other appropriate relief as may be determined to
10  be just, equitable and proper by this Court.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on those claims that can be tried to a jury.

DATED:  December 18, 2012                Respectfully submitted,

**GIRARD GIBBS LLP**

By: _____
Elizabeth C. Pritzker (SBN: 146267)

Eric H. Gibbs (SBN: 178658)
Janice S. Yi (SBN: 255645)
Scott M. Grzenczyk (SBN: 279309)

601 California Street, 14th Floor
San Francisco, CA 94108
Telephone:(415) 981-4800
Facsimile:  (415) 981-4846
Email:  ecp@girardgibbs.com;
        ehg@girardgibbs.com;
        jsy@girardgibbs.com;
        smg@girardgibbs.com

*Counsel for Plaintiff Lloyd Ranola*

25

CLASS ACTION COMPLAINT